## CLEARFIELD COUNTY v. CAMERON TP. POOR D.

APPEAL BY DEFENDANT FROM THE COURT OF QUARTER SESSIONS OF CLEARFIELD COUNTY.

Argued April 23, 1890—Decided May 19, 1890.

1. The act of March 27, 1873, P. L. 54, " to organize the state hospital for the insane at Danville, and provide for the government and management of the same," is not unconstitutional under § 8, article XI. of the constitution of 1838, prohibiting the enactment of a bill containing more than one subject.

2. Section 4 of said act is not unconstitutional as violative of § 6, article III. of the constitution of 1874, (a) because the parts of the acts referred to therein and made applicable to said hospital were parts of the general laws then existing and relating to the insane, and (b) the act was passed before the new constitution went into effect.

3. The change of the place of the custody of the insane does not change the method and manner of government and control, and all legislation germane to the subject, existing prior to the organization of said asy-

Statement of Facts.

lum, is applicable thereto, unless repealed by subsequent legislation upon the same subject matter.

4. Under § 4, act of April 8, 1861, P. L. 248, extended to said asylum by § 4, act of March 27, 1873, P. L. 55, the township of the legal settlement of a poor person committed to said asylum by the Court of Quarter Sessions, upon an acquittal of a criminal charge by reason of insanity, is liable over to the county for the amount paid for his maintenance.

5. An order committing to an asylum one who is acquitted of a criminal offence on the ground of insanity existing at the time of the alleged offence, is not a sentence of the court on the verdict, and an order certifying the township of the legal settlement may be made on due inquiry and notice at a subsequent term thereafter.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

No. 71 January Term 1890, Sup. Ct.; court below, number and term not given.

On April 26, 1889, a case stated was filed, between the commissioners of Clearfield county and the overseers of the poor of Cameron township, Northumberland county, wherein it was agreed in substance :

That Cameron township, county of Northumberland, was a separate poor district ; that for at least four years prior to February, 1880, one Nicholas Miller had a legal settlement therein ; that at that time he came into Clearfield county in indigent circumstances, and while there was charged with having committed a misdemeanor within said county. The case stated then proceeded :

" 6. That an information was made before a committing magistrate, a warrant issued and placed in the hands of a constable, and the said Nicholas Miller was committed to the jail of Clearfield county; that upon a trial by jury the said Nicholas Miller was found to be insane, and a verdict was so rendered, to wit : ' Now, this 17th day of March, 1880, we find that at the time of the commission of the misdemeanor charged in the indictment, the said Nicholas Miller was insane ; and, therefore, we acquit him on the ground of such insanity, and direct the county to pay the costs ; ' and thereupon, the said Nicholas Miller was committed to the Danville Insane Asylum, where he has since remained without any reasonable prospect of a cure.

" That if the court be of opinion that the last legal settle-

ment of the said Nicholas Miller was, at the time of the commission of the said misdemeanor, in the township of Cameron, in the county of Northumberland, in this commonwealth, and that the said township, under the several acts of assembly, is legally chargeable with the expenses, care and maintenance of the said Nicholas Miller, then this rule to be made absolute, otherwise to discharge the same : each party reserving the right to remove the case to the Supreme Court."

On October 16, 1889, argument having been had, the court, KREBS, P. J., filed the following opinion :

The questions to be determined, under the facts set forth in the case stated, are fourfold in their nature, as presented in the argument of the learned counsel for the defendant.

The first point raised by the counsel touches the application of the sixty-sixth, sixty-seventh, sixty-eighth, sixty-ninth and seventieth sections of the act of March 31, 1860, relating to the custody of the criminal insane, and the custody of the insane person in question, in the asylum at Danville. It is argued that, inasmuch as the Danville asylum for insane was not organized until after the approval of the act of March 27, 1873, nothing in previous legislation could be applicable to the insane committed thereto. I dismiss the point with the statement that the state legislature has the power to re-district the state for such purposes, and organize new hospitals as often as the needs of this unfortunate class may require, and that the statutes then in existence, governing and regulating the custody of this class of our people, immediately apply without anything more. The change of the place of custody does not change the method and manner of government and control. All legislation germane to this subject, the custody and control of the criminal insane, applies to the Danville asylum, under legislation existing previous to its organization and erection, unless repealed by legislation since upon the same subject matter.

The second point touches the constitutionality of the act of March 27, 1873, entitled an act "to organize the state hospital for the insane at Danville, and provide for the government and management of the same." It is argued by the learned counsel that the act is unconstitutional, because in conflict with the

eighth section of the eleventh article of the constitution of 1838, in that the act itself, in its title, contains more than one subject. To sustain the position we are asked to read the title, thus: "To organize the state hospital for the insane at Danville," as one subject, and that which follows, "and to provide for the government and management of the same," as a second and separate and distinct subject. The evil intended to be remedied by the amendment to the constitution of 1838, as covered by the eighth section, article XI., was something quite different from what is alleged to exist here. It was, we think, to prevent combining two distinct and separate objects of legislation in one bill, and thus uniting the friends of both in pushing it through, when, if they were incorporated in separate bills, they could not pass on their merits. The objects and purposes of the matters thus put into one act, were widely divergent, had no relation to each other, and in nowise pertained to each other. Such is not the case here. The organization of an asylum for the insane controlled by the state, must have its management and government regulated by the state. The organization and government are one and the same subject. They are in nowise concerning different objects; and the learning and zeal of the counsel has not persuaded us that this act has more than one subject, either in its title or its context.

It is also argued that the fourth section of the act of 1873 is unconstitutional, because it simply enacts by reference certain sections of the act of April 14, 1845, and the act of April 8, 1861, and makes them apply to the asylum at Danville, without re-enacting them in full, as required by the sixth section, article III. of the constitution of 1874. The first answer to this argument is, that it was not necessary at all to refer to the existing legislation relating to the criminal insane, to make them apply to the Danville asylum. The parts referred to were parts of the general laws existing and relating to this unfortunate class, and the statute organizing the Danville asylum, made no new system of government and control of this class, but only a new place where they should be kept under the system then existing; and, if the fourth section in the act of 1873 is admitted to be unconstitutional, it makes no difference, so far as the application of existing statutes relates to the custody of the criminal insane, and the liability for their

maintenance.   The second answer is, that the act of 1873 was
approved the twenty-seventh day of March, 1873, and the con-
stitution of 1873 did not go into effect until January 1, 1874,
and it did not come under this particular section.  We do not
see that there is anything in the argument touching the un-
constitutionality of the legislation relating to the question be-
fore us that requires further notice, and we are not convinced
that it can or ought to prevail.   We come to the acts of as-
sembly relating to the criminal insane and the custody thereof,
with the liability for their maintenance.

The act of June 13, 1836, P. L. 589, is the earliest complete
legislation pertinent to the subject under consideration.   Sec-
tions 58–62, inclusive, particularly relate to insane persons
charged with crime, and their custody and maintenance.  These
provisions were in substance incorporated into and supplied by
the sixty-sixth, sixty-seventh, sixty-eighth, sixty-ninth and
seventieth sections of the revised criminal code of March 31,
1860; and these several provisions of the act of 1836, supra,
may now be regarded as supplied by the act of 1860.   The
tenth and eleventh sections of the act of April 14, 1845, do
not add any new power to the courts over the criminal insane,
but confer upon the several courts the power to commit to the
Pennsylvania State Lunatic Hospital and Union Asylum for
the Insane, under existing laws, which were then the act of
June 13, 1836, supra.   The act of April 4, 1841, P. L. 57, dif-
fers in some particulars from the act of 1845, but this apparent
and real difference has been judicially reconciled by the Su-
preme Court in Lower Augusta Tp. v. Northumberland Co., 37
Pa. 143.   The act of February 17, 1854, P. L. 85, entitled " A
further supplement to the act relative to the Pennsylvania
State Lunatic Hospital, passed April 14, 1845," contains but
one section, and it provides who shall be liable for the main-
tenance of an indigent insane person who has no legal settle-
ment, but only a residence in the state.   This statute of 1854,
has no application in this case, because the insane person,
Nicholas Miller, has a legal settlement in Cameron township,
Northumberland county.   As we have already seen, the sixty-
sixth to seventieth sections, inclusive, of the revised criminal
code of 1860, incorporated the several sections of this act of
1836, supra, and supply the same.

The next statute, in order of time, is that of April 8, 1861, P. L. 248. This act is a supplement to the several acts of assembly relative to the Pennsylvania State Lunatic Hospital, and the fourth section evidently was intended to settle the question of the order of liability as between the hospital, the county and the poor district, that was left somewhat confused by previous legislation. By the fourth section, the primary liability to the hospital " is from the city or county from which the insane person is committed, with remedy over against the proper township, where, by existing laws, the township is liable for the support of the poor of the township, and the overseers of the poor of the township shall have remedy over against the property of the pauper, or against any relative required by law to maintain him or her, to the extent of their liability under the poor laws." The third section of this act relates to the manner of commitment of criminal insane.

Right here is where the whole argument of the learned counsel is directed to show that the act of March 27, 1873, which is the next in order, is unconstitutional ; or, if the whole of the act is not unconstitutional, then that the fourth section is unconstitutional, because the eighth to the fifteenth sections of the act of 1845, and the first to the fifth sections, inclusive, of the act of 1861, are " extended and made applicable " to the Danville Asylum, without being specifically re-enacted at length in the act of 1873. For the reasons we have already given, this argument cannot be sustained, in our opinion.

This brings us to the consideration of the act of May 14, 1874, P. L. 160. Here again we are to meet the argument of the learned counsel on the question of the constitutionality of this act, or at least of the second section of the act. This act was approved and went into effect under the constitution of 1874. It is, indeed, in our judgment, exceedingly doubtful whether this second section can stand, but this court cannot decide a statute unconstitutional, except upon clear and unquestionable grounds. If it be admitted, however, that this section is unconstitutional, what then? The statutes, and the sections thereof, sought to be incorporated, still remain, and to them we must go for guidance upon the questions to which they relate, because that this section may be ineffectual to incorporate them into the act of 1874, does not invalidate their original force.

This act of 1874, in its fifth section, undertakes to provide for the payment of the expenses of removal, and the maintenance and care of the insane in the hospitals of the state. The county in which the alleged crime was committed, and from which the insane person was sent to the asylum, is primarily liable, and the commissioners have remedy over against the poor district liable under existing laws, or against the estate and effects of every such prisoner, for the reimbursement of such expenses to the said county. What does this mean? Nothing more and nothing less than what was settled by the act of 1861, supra, and the decisions of the Supreme Court. The trustees of the hospital cannot be required to hunt out the place of settlement or residence, as the particular case may be, and bring action against that poor district. In order to alleviate the suffering humanity placed in their charge, it is necessary that they shall have, not only some one, but a certain municipality liable, without the labor and expense and delay of fixing liability. This the statutes prior to 1874 gave, and the act of 1874 does not change.

This insane person, Nicholas Miller, was committed from Clearfield county, and this county is primarily liable. But the act of 1874, does more than fix the primary liability to the hospital or asylum trustees. It gives the commissioners of the county that is primarily liable, remedy over against the poor district, liable under existing laws. What does this mean? Does it change the law as to the method of ascertaining what poor district is liable? Prior thereto the courts of the county from which the insane person was committed, ascertained the last place of legal settlement upon due notice. This is not changed by anything in the statute. It has been decided that an action of assumpsit will not lie against a poor district for moneys expended in support and maintenance of a pauper, until the last place of legal settlement is duly ascertained and certified. The reason may well be that the district cannot be called upon to defend an action involving a question of the amount of money it shall pay, until it is first settled that it is liable to pay some amount.

The only remaining question, now, is whether or not the court can now certify the last place of legal settlement of Nicholas Miller. The learned counsel for defendant has ar-

Opinion of Court below.

gued very earnestly that we cannot, and has cited the case of Commonwealth v. Mayloy, 57 Pa. 291. This case settles authoritatively what few courts ever questioned, namely, that a sentence cannot be changed or amended after the term at which it was imposed was passed. But a commitment to the asylum for the insane of one who is charged with a criminal offence and acquitted on the ground of insanity existing at the time of the commission of the alleged offence, is not a sentence of the court. If it was, the court would be sentencing the innocent, which the courts do not often knowingly do. The commitment to the asylum is only part of the duty cast on the court. What remained to be done in this case was, upon due inquiry, and after notice to the poor overseers of the proper district, to certify the last place of legal settlement. It has been decided by our Supreme Court that where an appeal from an order of removal under the poor laws is sustained, and a reasonable sum awarded by the court to the appellant for the costs and charges, the court may, at the same session, if demand is in them made, award such additional sum as will reimburse appellant for the amount paid towards the relief of the pauper between the time of removal and the determination of the appeal. But if no such demand be made at the same session, the right to recover such sum is not lost; a claim therefor may subsequently be filed and allowed by the court. The two claims being separate and independent, the adjudication of one is not res judicata as to the other: Huntington Tp. Poor D. v. New Columbus Bor. Poor D., 109 Pa. 579; Williamsport Poor D. v. Eldred Tp. Poor D., 6 W. N. 188. The commitment to the asylum, and the certifying the last place of legal settlement, are two distinct actions by the court. The welfare of the unfortunate, as well as the community, may require prompt and immediate action in the one case, while the court, by reason of want of knowledge of the facts, and often this knowledge is acquired after much trouble, is prevented from certifying the place of legal settlement. The right to act now cannot be defeated on the ground of res judicata; neither does the lapse of time, something akin to the statute of limitations, prevent this. Whether or not the defendant can be held liable for more than six years last past,

before suit brought, or for what period of time the poor district is liable, we are not called upon to decide.

—Six points presented by the defendant, raising the same questions passed upon in the foregoing, were denied, when the court made the following order:

And, now, October 16, 1889, the rule heretofore granted on the poor district of Cameron township, Northumberland county, to show cause, if any it has, why that should not be certified as his last place of legal settlement, being duly served, and the cause being fully heard, and no sufficient legal cause being shown, the rule is hereby made absolute. And it is further ordered and decreed, that Cameron township, Northumberland county, is and was the last place of legal settlement of Nicholas Miller at the time of his trial for the alleged criminal offence by the Court of Quarter Sessions of Clearfield county, and acquittal on the ground of insanity, and at the time he was committed by said court to the Asylum for the Insane at Danville, Pa.[7]

—Thereupon the defendant took this appeal, assigning for error:

1–6. The answers to the defendant's points.

7. The order of the court.[7]

*Mr. S. B. Boyer*, for the appellant.

Counsel cited: Act of April 13, 1868, P. L. 90; act of March 27, 1873, P. L. 54; Hatfield v. Commonwealth, 120 Pa. 395; §§ 8–15, act of April 14, 1845, P. L. 440; §§ 1–5, act of April 8, 1861, P. L. 248; §§ 59–60, act of June 13, 1836, P. L. 589; act of May 14, 1874, P. L. 160; §§ 66–68, act of March 31, 1860, P. L. 445; Dorsey's App., 72 Pa. 192; Beckert v. Allegheny City, 85 Pa. 191; Commonwealth v. Mayloy, 57 Pa. 291.

*Mr. W. H. Patterson* and *Mr. S. V. Wilson*, for the appellee.

Counsel cited: Allegheny Co. Home's App., 77 Pa. 80; Yeager v. Weaver, 64 Pa. 428; Blood v. Mercelliott, 53 Pa. 391; Danville etc. Poor D. v. Montour Co., 75 Pa. 37; Lower Augusta Tp. v. Northumberland Co., 37 Pa. 143; In re Blewitt, 11 Phila. 653; Wertz v. Blair Co., 66 Pa. 18; Penna. St. Lun. Hospital v. Wayne Co., 2 Pears. 83.

Statement of Facts.

PER CURIAM:

The learned judge below has said all that is necessary to say in this case.

Order affirmed.