### Ex parte GREEN.

#### (Circuit Court, W. D. Kentucky. May 2, 1902.)

1. TAXATION—INTERSTATE COMMERCE.

A city ordinance imposed a license tax of $5 per day on "each itinerant person or peddler traveling from residence to residence soliciting orders for, or selling directly or indirectly, goods, wares or merchandise to, the consumer," etc. Petitioner was agent for a party living in another state, and solicited orders for various goods from persons in the city, the goods ordered being shipped direct from the other state to the purchaser. Held, that petitioner was not liable for the tax, and could not be imprisoned for nonpayment thereof, as in so far as the ordinance applied to him it was a tax on interstate commerce, and invalid.[1]

2. HABEAS CORPUS—RIGHT TO DISCHARGE.

Petitioner, having been imprisoned under a judgment of the police court for a violation of such ordinance, was entitled to his discharge on habeas corpus, though he had not taken an appeal.

Joel C. Clore and Edmund T. Clayton, for petitioner.
Augustus E. Willson, for respondent.

EVANS, District Judge. The petitioner, Chester Green, a citizen of Kentucky, was an agent of A. J. Conroy, who, under the name of A. J. Conroy & Co., carried on business in the city of Cincinnati, in the state of Ohio. The method of conducting business in this state by the petitioner as agent for Conroy was this: He, traveling from residence to residence, solicited orders for goods, wares, and merchandise of various sorts, including lace curtains, clocks, silverware, etc., belonging to Conroy, from persons in Lebanon, Ky., and when orders therefor thus taken by him were accepted by Conroy the merchandise was then shipped by the latter from the state of Ohio direct to the purchaser in Kentucky, and was not shipped in any instance to the petitioner, nor were any of the goods shipped from any point in Kentucky, nor were any of them manufactured in Kentucky. Payments for the goods thus ordered and shipped were to be made in installments. The petitioner collected the first installment thus due, and

[1] See Commerce, vol. 10 Cent. Dig. § 111.

other agents of Conroy collected the balance of the agreed price. The city of Lebanon, in this state, attempted to impose a license tax on the business thus conducted and carried on by the petitioner. This attempt was made under an ordinance enacted by the board of council, the applicable provisions of which are in these words:

"Be it Ordained by the Board of Council of the City of Lebanon, Kentucky:

"Section 1. That from and after April 30, 1900, all companies, corporations and persons desiring to exercise any privilege, sell any article or engage in any business, hereinafter mentioned, in this city, shall before doing so procure a license therefor and pay a tax thereon as follows: * * * To each itinerant person or peddler traveling from residence to residence soliciting orders for, or selling, directly or indirectly, goods, wares, or merchandise to, the consumer, per day, $5.00. To each itinerant person or peddler traveling from residence to residence soliciting orders for, or selling, directly or indirectly, clocks, watches or plate ware to, the consumer, per day, $5.00."

The petitioner, having refused to pay the license or taxation thus imposed upon the business he thus conducted in Lebanon, was arrested, tried, and convicted in the police court of that city for a violation of the said ordinance, and a fine of $10 was imposed upon him therefor. Upon his refusal to pay the fine thus imposed by the court he was confined and imprisoned in the station house. Alleging in his petition for the writ of habeas corpus issued in this case that such imprisonment is in violation of his rights as a citizen and of the constitution and laws of the United States, he asks to be released, and, the causes of his imprisonment and detention being ascertained to be as stated, the court must determine the questions presented.

Since the decision of the cases of Brennan v. City of Titusville, 153 U. S. 289, 14 Sup. Ct. 829, 38 L. Ed. 719; Asher v. Texas, 128 U. S. 129, 9 Sup. Ct. 1, 32 L. Ed. 368; Lyng v. Michigan, 135 U. S. 161, 10 Sup. Ct. 725, 34 L. Ed. 150; Leloup v. Port of Mobile, 127 U. S. 640, 8 Sup. Ct. 1380, 32 L. Ed. 311; and Robbins v. Taxing Dist., 120 U. S. 490, 7 Sup. Ct. 592, 30 L. Ed. 694,—it has not been supposed that any possible question was left open for discussion in such cases. Those cases in their substantial features are precisely like the one before us, and they and many others of like character have left no room for doubt upon the subject. The lower courts of the United States have also many times passed upon such questions, but I shall refer to only one case, namely, In re Tinsman (C. C.) 95 Fed. 648. Indeed, if any propositions have been conclusively settled by the courts they are—First, that such attempted impositions, though under the guise of licenses and police regulations, constitute, nevertheless, nothing but taxation upon interstate commerce; and, second, that no state or municipality can tax such commerce at all. Why it should still occasionally be attempted in the face of such explicit rulings by the supreme court of the United States might be considered matter for curious speculation.

It is quite true that the terms of the ordinance in this instance are wide enough and general enough to cover cases of state commerce as well as those of interstate commerce, but with the former we have nothing to do; for, as indicated in many of the opinions of the supreme court, if a state or a local community desires to tax its own commerce it has a clear right to do it, and whether it is injurious or not to its in-

terests is a matter for that state or local community to determine for itself, but no state or municipality has the right, while taxing domestic commerce, also to tax interstate commerce. That taxation by any state or locality in any form is forbidden by the supreme law of the land. A tax upon interstate commerce is the only sort of tax sought to be enforced against the petitioner in this instance, and it makes no difference whether the petitioner is or is not called a "peddler." The result is the same. True, there are circumstances under which the police power of the state may be exercised in a way which involves impositions and exactions upon the citizen which are substantially equivalent to taxation; but the supreme court in the cases referred to has left no room for controversy that the case of this petitioner, and the attempted exertion of authority under which he is imprisoned, is not one which involves the mere exercise of the police power for the protection of the morals or health of the community, but is a direct tax upon interstate commerce itself.

It may be pertinent to remark that no clause of the federal constitution has been promotive of greater advantage and benefit to the country at large or of the general welfare than has that provision which gives to congress the exclusive right to regulate commerce between the states, and none has been more clearly and sedulously guarded by the courts of the United States against local encroachments of every character. This judicial course is so plainly demanded by every consideration of constitutional policy in our federal form of government that we need not enlarge upon the subject. The attempt to tax interstate commerce, even in a small way in this instance, must fail, as every other attempt to do so has heretofore failed.

It is insisted that the petitioner should be remanded to the station house, because there has been no appeal from the judgment of the police court. Ordinarily, such a contention, being addressed to the discretion of the court, might be a strong one; but in a case so palpable as this, and where the constitutional law governing it has been so conclusively adjudicated and determined by the highest court, and where the injustice and hardship (pending a perfectly unavailing and useless retrial in a state court of the law questions involved) of the petitioner's being for a time in prison, or being subjected to other practical inconveniences and expenses altogether disproportionate to the amount of the fine imposed or the money involved, are so plain and manifest, the discretion of the court should not be easily moved in the direction of delay in denying to the petitioner his unquestionable constitutional rights. Such rights in so plain a case should be vindicated at once, instead of waiting until an appeal could be prosecuted in the state courts, and especially where the right to such appeal might admit of doubt. It may possibly be true that such a case as that against the petitioner in the police court for the mere purpose of an appeal from that court to the state circuit court would come within section 3519 of the Kentucky Statutes, instead of section 3518 thereof, or section 362 of the Criminal Code of Practice, which deny appeals where the fine is less than $20, though it may not be entirely clear how much scope would be given to the phrase "testing the legality" of an ordinance under section 3519; but, at all events, the petitioner

114 F.—61

being in custody, and being detained therein in plain and manifest violation of the constitution and laws of the United States, is entitled to be now discharged therefrom, and his discharge is accordingly ordered.