Ex parte POWERS.

(District Court, W. D. Kentucky. January 5, 1904.)

1. HABEAS CORPUS—FEDERAL COURTS—PRISONER IN CUSTODY UNDER CRIMINAL CHARGE BY STATE.

A person in prison under a conviction by a state court on an indictment charging him with being accessory to a murder, and pending an appeal from such conviction, is not "in custody in violation of the Constitution or of a law or treaty of the United States" within the meaning of Rev. St. § 753 [U. S. Comp. St. 1901, p. 592], and such section does not authorize his discharge on habeas corpus by a federal court, on the ground that during his trial he was deprived of rights guarantied him by the federal Consti-

¶ 1. Jurisdiction of federal courts on habeas corpus proceedings, see note to In re Huse, 25 C. C. A. 4.

See Habeas Corpus, vol. 25, Cent. Dig. § 44.

tution. However erroneous the judgment of conviction may have been, his imprisonment is legal until the charge made in the indictment has been finally adjudicated by the state courts.

2. SAME.

A writ of habeas corpus from a federal court cannot be made to perform the office of a writ of error to review a judgment of conviction in a state court in a criminal case of which it had jurisdiction; and, even where it is claimed by the defendant that some right under the Constitution of the United States has been denied him, a federal court will not ordinarily interfere by writ of habeas corpus, but will leave him to his remedy by direct proceedings for review in the state courts, and by writ of error from the Supreme Court of the United States if his claims should be there decided adversely.

Habeas Corpus.

Sims & Grider and H. C. Howard, for petitioner.

EVANS, District Judge. The petitioner, who is in the Jefferson county jail under sentence of death, asks for a writ of habeas corpus. Section 753, Rev. St. U. S. [U. S. Comp. St. 1901, p. 592], so far as applicable to the petition before me, expressly provides that "the writ of habeas corpus shall in no case extend to a prisoner in jail, unless where he * * * is in custody in violation of the Constitution or of a law or treaty of the United States," etc. The petitioner shows that he is in jail under a conviction had in a state court upon an indictment charging him with being accessory to the murder of William Goebel. It also shows that he has appealed from the judgment of conviction, and that the appeal is pending in the Court of Appeals of the state.

Of the indictment for the offense charged the state court undoubtedly had jurisdiction, and its judgment, however erroneous, is not a nullity. It cannot be maintained that being in jail under such a conviction upon such a charge is of itself a being in "custody," in violation of the Constitution or of any law or treaty of the United States. No provision of the Constitution or of any law of the United States in terms forbids such a result from such a cause. Conceding this, it is nevertheless suggested that during the progress of the trial which resulted in his conviction the petitioner was denied all the rights secured to him by the fourteenth article of amendments to the Constitution of the United States. Certainly, if the averments of the petition be true, it may be hard to escape the conclusion that he was manifestly denied some, at least, of those rights. But, if so, is this the proper tribunal or now the proper time so to adjudge, or to give the relief to which he might be entitled as a citizen and as a man? There can be but one answer to the inquiry. The petitioner is not in jail primarily, or in the sense in which we must view the case, for any cause except that which comes through the processes of law resulting from his indictment upon the charge upon which he was tried and convicted, to wit, that of being accessory to the murder of Goebel. To imprison him after a conviction upon that charge, or in advance of a conviction thereon, under process issued upon the indictment itself, is in no sense a violation of the Constitution of the United States, or of any law or treaty thereof. In the legal sense, that is the only ground of his imprisonment, and it would necessarily so appear in any return to a writ of habeas corpus.

It is quite true that in a certain secondary or remote sense it might be said, if the averments of the petition be taken as true, that, if he had not been denied his rights under the fourteenth amendment, he would not have been convicted; but, even if that were true, it would only affect the conviction, and not the imprisonment, which would continue if the conviction were set aside and a new trial granted, especially as this court could not admit to bail pending another trial in another court. But we cannot look at the case from the standpoint last indicated, nor treat the real cause of imprisonment as being anything except the charge made in the indictment and the conviction thereon. The imprisonment appears to be the result of the charge made in the indictment, and not in any palpable sense the result of the denial, during the progress of a trial upon that charge, of his rights under the fourteenth amendment. If it be true that the petitioner, at his trial, was denied any of the rights guarantied by the fourteenth amendment, this is not the tribunal to review the proceeding.

Section 753, Rev. St. [U. S. Comp. St. 1901, p. 592], plainly limits the power of the federal courts to cases where the "custody" is in violation of the federal Constitution or laws. It excludes the power to correct by writs of habeas corpus mere errors in the proceedings of some other court having jurisdiction. There is no right to a writ of error from this court to a state court, either directly, or indirectly through the medium of the writ of habeas corpus, though under some circumstances and in a certain modified sense this court might have the right to proceed under section 753 to ascertain whether an imprisonment itself was in violation of the Constitution or laws of the United States, or was inflicted in a case of which the state courts had no jurisdiction. But ordinarily this court, so long as there is or may be an appeal in due course of law from a judgment of a state court in a criminal case, cannot and should not review that judgment, even where the rights of a citizen, under the Constitution or laws of the United States, are alleged to have been denied. Other tribunals are given that power. In some cases it is true, especially where no appeal is allowed by law, the cause of the confinement of a prisoner in a jail, and even the grounds of his conviction of an offense, may be looked into, to see if such confinement is outside of the jurisdiction of the court, or is in violation of the Constitution or laws of the United States. Ex parte Green (C. C.) 114 Fed. 959; Ex parte Comingore (D. C.) 96 Fed. 552. Unquestionably in this instance the petitioner had the right under the laws of Kentucky to an appeal to the Court of Appeals, and, if the constitutional questions have been properly raised in the record in the state court, he will, as a matter of right, be entitled to a writ of error from the United States Supreme Court, should the Court of Appeals affirm the judgment against the petitioner. It is not for this court to interfere with those processes. The right to review the proceedings by which the petitioner was convicted is vested in other tribunals, and this case is not like one where an appeal is denied, or where the trial court had no jurisdiction or other extreme cases.

Besides these considerations, other matters may be alluded to. Without having the record in the state court before me, and without expressing any opinion upon its contents, or whether it raises certain constitu-

tional questions, it may be said that if, in fact, it presents those questions in such a way as to entitle the petitioner to a writ of error from the Supreme Court of the United States, then clearly this court should not anticipate the action of that court, and especially as no writ of error would be necessary or allowable, if the Kentucky Court of Appeals should reverse the judgment against the petitioner. If, on the other hand, the constitutional questions are not so raised in the record as to entitle the petitioner to go to the Supreme Court, then it is not for this court to say that there was error in the proceedings in the state court in a case within its jurisdiction, by its denial to the petitioner during the trial of his rights under the Constitution of the United States. It would not, in that contingency, appear that any of those rights were properly claimed before the state court by the petitioner, or were improperly denied by that court. It necessarily results, under our dual system of government, that the federal tribunals ought not to interfere by writs of habeas corpus with the administration of the state criminal laws, except in clear and urgent cases, where no other available remedy is open. The authorities leave no doubt of the soundness of this conclusion.

The fourteenth article of amendments to the Constitution of the United States, after making all persons born in the United States or naturalized therein citizens of the United States, provides, first, that no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; second, that no state shall deprive any person of life, liberty, or property without due process of law; and, third, that no state shall deny to any person within its jurisdiction the equal protection of the laws. These are provisions, not only of extraordinary, but of paramount, importance, and it is settled clearly enough that the word "state" in this amendment includes its officers, its courts, and other governmental agencies. All of them are included in the prohibitions of the constitutional provision. Chicago, etc., R. R. v. Chicago, 166 U. S. 233, 17 Sup. Ct. 581, 41 L. Ed. 979, and cases cited. If it were not so, the amendment would be futile. True, the rights indicated are guarantied by the organic law; but, in order that even the Supreme Court of the United States may enforce the guaranty, the right claimed must be asserted in some form, and its denial by the state court must in some way be shown upon the record. Otherwise the court can get no tangible hold upon the question.

It is quite impossible, from the averments of the petition before me, to say whether, in a way that meets that requirement, it was insisted upon, and shown or adequately attempted to be shown, at the trial in the state court: Either, first, that any privilege or immunity of the petitioner as a citizen of the United States was denied or abridged by the state court at the trial. This would be a very general claim, of course, and it would be requisite to specify in the record what privilege or immunity was abridged or denied, and how it was done, or at least it ought to be shown in some proper way how any attempt was made to claim such right and how it was denied. Or, second, that the trial and its results, if enforced, would deprive the petitioner of his life without due process of law. This claim should, of course, be made expressly and distinctly, and the record made to show in some proper

way how it was made, the grounds thereof, and how it was denied. Or, third, that the petitioner at the trial was denied the equal protection of the laws. This claim should be made before the state court, and the record made explicit, not only as to the claim, but how it was supported by proof, or offers of proof. Or, at all events, in some proper way these matters must have been or must be called to the attention of one or the other of the state courts, and the decision must have been or must be against them. Sayward v. Denny, 158 U. S. 183, 15 Sup. Ct. 777, 39 L. Ed. 941. We must assume that these claims were or will be properly presented, and that the record will so show.

It is claimed that in December, 1899, upon a proper certificate of his election in the preceding November, William S. Taylor, in the legal and ordinary way, was inaugurated Governor of Kentucky, and entered upon the discharge of his duties, and continued to perform those duties for several succeeding months. In the meantime his election was contested before the Legislature by Wm. Goebel; but while the contest was pending, and prior to its determination, Goebel was shot. While he was on his deathbed a portion of the members of the Legislature undertook to determine the contest, and certain publications, called the "House Journal" and the "Senate Journal" were subsequently printed, and undertook to establish a record of the contest and its result. Possibly while he was alive, but most likely unconscious, the oath of office is claimed to have been administered to Goebel. If done at all, this was accomplished only a very short time before his death. It is claimed that these proceedings were fraudulent and pretended, that the so-called House Journal and Senate Journal were pure fabrications, and that the contest was never in fact determined by the Legislature or a quorum thereof. It may be difficult to reach any other conclusion; but it would seem that these are questions to be determined, at least in the first instance, by the state courts, as questions rather of state than of federal law. In re Duncan, 139 U. S. 449, 11 Sup. Ct. 573, 35 L. Ed. 219.

It is insisted in the petition before me that W. S. Taylor, after being duly qualified as the Governor of the state, and while acting as such, executed and delivered to the petitioner, who accepted it, a full and free pardon for the offense charged in the indictment; that this pardon, under the seal of the state, was exhibited to the state court at the trial; and that it was denied by that court any effect whatever. It goes without saying, in my judgment, that every citizen of Kentucky, equally with all of his fellows, is entitled to the benefits of a free and full pardon given by a Governor, either de jure or de facto. If he be the acting Governor under color of law, his acts, upon every principle of law known to me, are effective, and particularly so until after his title to the office has been finally adjudged to be invalid. See In re Henry Ward, 173 U. S. 454, 19 Sup. Ct. 459, 43 L. Ed. 765. Can one citizen alone be denied the benefits of such a pardon, while all others have the right to such benefits, and still not be deprived of the equal protection of the laws? is a most important inquiry. But, however strong my convictions on the subject might be, it would not follow that I had power to grant the writ prayed for. The ruling of the court may have been erroneous; but, as the state courts are as much bound by,

and as they as much respect, the Constitution and laws of the United States as the federal tribunals, it must be presumed on this hearing that the Court of Appeals in this case will detect, and, if possible, correct, the errors, if any, of the trial court.

Under Kentucky law every person accused of a crime is entitled to be tried by a fair and impartial jury. Const. § 7. Can the petitioner, in a palpable way, be denied this right, while all others are given the full benefit of it? Can the life or liberty of the petitioner, a citizen of the United States, be taken from him by the verdict of a jury, packed and organized for that express purpose by the officers of the state by notoriously public methods, and it still be said that there was no denial to him of the equal protection of the laws? If due process of law and the equal protection of the law do not include a fair proceeding in the selection of a jury, it is quite difficult to see what they do include; for, unless that is done, a trial by a jury would be a mockery. The stream of justice would indeed be poisoned at the fountain-head. See Strauder v. West Virginia, 100 U. S. 308, 309, 25 L. Ed. 664.

It is averred in the petition that the jury in this case was a packed jury, and that the manner of its selection was such as could only result, and was intended to result, in having a jury pledged in advance to convict the prisoner; but even that gives me no right to interfere, for, if we assume the facts to be true as stated, and if the questions of constitutional law growing out of them shall properly and adequately appear in the record of the state court, the remedy of the petitioner is complete through his appeal to the Court of Appeals of the state, and, if that tribunal should concur with the circuit court in denying or ignoring the constitutional rights claimed by the petitioner, the Supreme Court of the United States would doubtless assume jurisdiction upon a writ of error. Nor can it be supposed that this could be prevented by sections 280 and 281 of the Criminal Code of Kentucky, which exclude the right of exception to anything that may be done in the formation of the jury in the trial court; for otherwise every constitutional guaranty could be crippled or destroyed by similar means with ease and facility. Shutting off, or attempting to shut off, consideration by a higher court of such questions, while allowing all others which may affect results involving the life or liberty of the accused to be reviewed and corrected, can have no effect upon the rights or powers of the Supreme Court under the Constitution of the United States, if, indeed, the Court of Appeals itself can constitutionally ignore or be exempted from the duty of enforcing the constitutional rights of the citizen, if appealed to for the purpose. See, especially, Rogers v. Alabama, 192 U. S. 226, 24 Sup. Ct. 257, 48 L. Ed. ——. The constitutional provisions referred to are of higher sanction than any statute or Code, and create rights which it is the duty of the judicial tribunals to protect and enforce, any law of any state to the contrary notwithstanding.

So that, if the questions arising under the fourteenth amendment were, or if they shall be, properly raised and presented, the rights of the petitioner are clear. If not raised or presented, either at the trial or in the Court of Appeals, then those rights would not appear to have been denied by the state courts, and the failure to demand these rights cannot have the effect of giving this court revisory jurisdiction by

means of a writ of habeas corpus. The authorities establish the following propositions, to wit:

1. That judgments of the state courts in criminal cases, of which they have jurisdiction, should not, in general, be reviewed by the federal courts through writs of habeas corpus, but that, where it is claimed in such cases that some right claimed under the Constitution of the United States has been denied, the proper remedy is by a writ of error. Markuson v. Boucher, 175 U. S. 184, 20 Sup. Ct. 76, 44 L. Ed. 124; Tinsley v. Anderson, 171 U. S. 101, 18 Sup. Ct. 805, 43 L. Ed. 91.

2. That the writ of habeas corpus cannot be made to perform the office of a writ of error. Under the latter the inquiry is addressed to errors merely, while in the former the question is whether the proceedings and judgment are nullities. United States v. Pridgeon, 153 U. S. 48, 14 Sup. Ct. 746, 38 L. Ed. 631; In re Schneider, 148 U. S. 166, 13 Sup. Ct. 572, 37 L. Ed. 406; In re Lane, 135 U. S. 443, 10 Sup. Ct. 760, 34 L. Ed. 219.

3. While, under section 753, application for a writ of habeas corpus may be made to the federal courts after a judgment in a criminal case, those courts should ordinarily limit the remedy by that writ to cases in which the judgment or sentence attacked is clearly void by reason of its having been rendered without constitutional power, or without jurisdiction, or in excess thereof. In re Frederich, 149 U. S. 70, 13 Sup. Ct. 793, 37 L. Ed. 653.

4. Though it is somewhat a matter of discretion, yet ordinarily a federal court, even in a case where it is otherwise allowable, will not interfere, by writ of habeas corpus, with a criminal case pending in a state court, in advance of a trial or final determination of the case by the state court. Cook v. Hart, 146 U. S. 184, 13 Sup. Ct. 40, 36 L. Ed. 934; Davis v. Burke, 179 U. S. 399, 21 Sup. Ct. 210, 45 L. Ed. 249. Exceptions to the general rule are found in cases like Davis v. Burke, 179 U. S. 399, 21 Sup. Ct. 210, 45 L. Ed. 249; Boske v. Comingore, 177 U. S. 466, 20 Sup. Ct. 701, 44 L. Ed. 846; Whitten v. Tomlinson, 160 U. S. 231, 16 Sup. Ct. 297, 40 L. Ed. 406; In re Neagle, 135 U. S. 1, 10 Sup. Ct. 658, 34 L. Ed. 55.

5. When the trial court of a state has power and jurisdiction under state laws to try a case for murder, and the prisoner, when convicted, has an appeal of which he avails himself, the federal court, if applied to pending the appeal for a writ of habeas corpus, on the ground that the proceedings were in violation of the Constitution of the United States, should decline to interfere. In re Duncan, 139 U. S. 449, 11 Sup. Ct. 573, 35 L. Ed. 219. This case alone would appear to be decisive of the one before me.

From every standpoint, therefore, it appears clear that this court should not at this stage attempt to interfere, and the application for a writ of habeas corpus is accordingly denied.