WALTERS v. McKINNIS.

(District Court, W. D. Pennsylvania. January 6, 1915.)

No. 2.

1. HABEAS CORPUS �köm1—RIGHT TO WRIT AS OF COURSE.
    The writ of habeas corpus does not issue as of course, but is of right when reasonable cause is shown.
    [Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 1, 3; Dec. Dig. �köm1.]

2. CONSTITUTIONAL LAW �köm255—COMMITMENT TO INSANE ASYLUM—DUE PROCESS OF LAW.
    Where, under Act Pa. June 26, 1895 (P. L. 388), providing that upon commitment of a justice of the peace or other committing magistrate of any person on a criminal charge less than a felony, who upon examination by any two physicians shall be certified by them to be insane, it shall be the duty of the county commissioners, with the approval of the court of quarter sessions or a judge thereof, to remove such indigent insane person to the proper hospital for the insane, there to be maintained at the expense of the county until the proper legal settlement of such indigent insane person can be ascertained, a person arrested for assault and battery was committed to an insane asylum on the certificate of two physicians, without notice, a hearing, or an opportunity to defend, and without notice of any kind to any friend or relative, she was denied due process of law, in violation of Const. U. S. Amend. 14.
    [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 736–738, 740–745; Dec. Dig. �köm255.]

3. HABEAS CORPUS �köm45—UNITED STATES COURTS—DETENTION IN VIOLATION OF FEDERAL CONSTITUTION.
    Where a person committed to an insane asylum under Act Pa. June 26, 1895 (P. L. 388), with the approval of the court of quarter sessions, without notice or an opportunity to be heard, in violation of Const. U. S. Amend. 14, sued out a writ of habeas corpus in the court of common pleas, which court expressly declined to pass upon the legality of the commitment or the regularity of the proceedings, on the ground that the

⊸For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

court of quarter sessions had the exclusive right to pass upon the legality of such proceedings, the United States District Court would grant relief by habeas corpus, though ordinarily, where one under imprisonment by virtue of the process of a state court, claims to be restrained in violation of the Constitution or laws of the United States, the federal courts will not interfere, but will leave such person to obtain redress through the state courts, and failing there by writ of error to the Supreme Court of the United States, as such person had no remedy, either by appeal from the commitment or by appeal from the decision of the court of common pleas, and, though she may have had a remedy by an application to an appellate state court for a writ of habeas corpus, this did not require the federal courts to refuse relief.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 38–45; Dec. Dig. ☞45.]

**4. HABEAS CORPUS ☞113—APPEAL—DECISIONS REVIEWABLE.**

In Pennsylvania no appeal lies from an order in habeas corpus remanding the prisoner to custody.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 102–115; Dec. Dig. ☞113.]

Habeas corpus by Sarah E. Walters against Dr. C. R. McKinnis, Superintendent of the Pittsburgh City Home for the Insane, Marshalsea. Relator discharged, but remanded to the custody of the sheriff to answer a charge of assault and battery.

Weil & Thorp, S. Leo Ruslander, and Simon T. Patterson, all of Pittsburgh, Pa., for petitioner.

H. H. Hanna and R. M. Gibson, both of Pittsburgh, Pa., for respondent.

THOMSON, District Judge. In the decision of this case, I am anxious, on the one hand, not to deny to the relator any right guaranteed to her under the Constitution of the nation and the laws of the land, and, on the other hand, not to invade the province of any judicial tribunal, or violate any of those well-established principles necessary to be observed in seeking to protect the citizen against unlawful restraint or imprisonment under the great writ of habeas corpus. I will state the facts in the case as they appear, and will then endeavor to apply the legal principles which I deem applicable to such facts.

During the month of November, 1914, the relator was living at No. 11 Marion street, Pittsburgh, where she had been conducting a rooming house for a period of a year or more, and for three years prior to that time had conducted a restaurant on Liberty avenue, in said city. On November 23, 1914, petitioner went before Alderman J. J. Kirby, of the city of Pittsburgh, and sought to make an information against one E. E. Clark for assault and battery. The information was not taken, but she was told by the alderman to return the next day. When she returned the following day to the alderman's office, she was arrested on an information made by the said Clark against her for assault and battery, and was thereupon committed to the county jail. Bail was first fixed at the sum of $300. This bail was shortly afterwards produced, but it seems in the meantime the bail had been raised to $2,000. Bail in this amount being produced on November 24th, the parties were informed by the alderman that the matter was out of his hands, as he

had received a certificate that the petitioner had been adjudged insane. On November 24, 1914, the district attorney of Allegheny county petitioned the court of quarter sessions for the appointment of two physicians to determine the sanity of Mrs. Walters, under the provisions of an act of assembly of Pennsylvania approved June 26, 1895 (P. L. 388). Doctors Ellis and Ayers were thereupon appointed, and upon the following day, November 25th, made a return to said court certifying that they had examined petitioner at 10 o'clock a. m. on that day and found her insane. Two of the county commissioners of Allegheny county thereupon issued a commitment, wherein petitioner was directed to be removed by the sheriff to the City Poor Farm at Marshalsea, there to be detained as an indigent insane person. On the commitment was this indorsement:

"The above commitment is hereby approved by the court of quarter sessions of Allegheny county.
"By the Court."

Under this commitment petitioner was taken to Marshalsea on November 28, 1914, and there detained and confined. No notice of any kind was given to petitioner, or to any friend or relative, of the proceeding to adjudge her a lunatic, so that petitioner was adjudged a lunatic and confined in the asylum without notice of any lunacy proceeding, without a hearing, and without opportunity to defend. On November 28, 1914, petitioner sued out a writ of habeas corpus in the court of common pleas of Allegheny county, on which a hearing was had, the writ discharged, and relator remanded, on December 17, 1914. In the opinion of his honor, Judge Haymaker, discharging the writ, and which was offered in evidence in this proceeding, it appears that the court found the petitioner insane, and for that reason alone she was remanded. The judge expressly declined to pass upon the legality of the commitment, or the regularity of the proceedings under the act of assembly, holding that the court of quarter sessions, being a court of co-ordinate jurisdiction, had the exclusive right to pass upon the legality of the proceedings, and that for the common pleas to do so would be to improperly assume the power of an appellate court. On December 21, 1914, a writ of habeas corpus was granted in this court, returnable December 22d. The petitioner being produced in court in obedience to the writ and return thereto being made, petitioner was admitted to bail, and a hearing was had on December 26th.

Respondent moved to dismiss the writ. The reasons assigned at the hearing, as supplemented by motion filed since the hearing, are as follows:

"1. Relator has not exhausted her remedy in the state courts.
"2. Relator has not raised in the state courts the question of the constitutionality of the act of Legislature under which she is confined, and such question has never been passed upon in the state courts.
"3. Relator has not taken her case to the highest state court.
"4. Relator's case is not an exceptional one, within the meaning of the decision of Urquhart v. Brown, 205 U. S. 179, 27 Sup. Ct. 459, 51 L. Ed. 750, Ex parte Bartlett (D. C.) 197 Fed. 98, and Ex parte Powers (D. C.) 129 Fed. 985. She is not a person aggrieved. She has been given a hearing, both on the question of indigency and insanity, and has been adjudged to be an indigent insane.

"5. The act of June 26, 1895 (P. L. 388), is constitutional, standing alone.

"6. The act of June 26, 1895 (P. L. 388), is constitutional when read in connection with the whole system of the insanity laws of the state.

"7. Under all the decisions of the United States courts, the writ ought to be dismissed, and relator be remanded."

The petitioner bases her right to discharge on the fourteenth amendment to the Constitution of the United States, which provides that no state shall deprive any person of life, liberty, or property without due process of law. It is contended that her incarceration in the asylum, without notice or an opportunity to defend, was a plain violation of her constitutional rights. If this be true, the relator should be discharged, unless there be some other substantial reason why the court, under all the circumstances, should withhold relief.

[1] The writ of habeas corpus does not issue as of course, but is of right, when reasonable cause is shown. Section 752 of the Revised Statutes of the United States (Comp. St. 1913, § 1280) provides:

"The several justices and judges of the said courts, within their respective jurisdictions, shall have power to grant writs of habeas corpus for the purpose of an inquiry into the cause of restraint of liberty."

In section 753 it is provided:

"The writ of habeas corpus shall in no case extend to a prisoner in jail, unless where he is in custody under or by color of the authority of the United States, or is committed for trial before some court thereof; or is in custody for an act done or omitted in pursuance of a law of the United States, or of an order, process, or decree of a court or judge thereof; or is in custody in violation of the Constitution or of a law or treaty of the United States."

Section 761 provides:

"The court, or justice, or judge shall proceed in a summary way to determine the facts of the case, by hearing the testimony and arguments, and thereupon to dispose of the party as law and justice require."

[2] The Supreme Court of the United States, in Re Neagle, 135 U. S. 41, 10 Sup. Ct. 660 (34 L. Ed. 55), after quoting the above provisions, adds:

"This of course means that, if he is held in custody in violation of the Constitution, or a law of the United States, * * * he must be discharged."

Was the relator accorded that due process of law guaranteed her by the Constitution in the proceedings under which she was imprisoned? In Simon v. Craft, 182 U. S. 427, 21 Sup. Ct. 836, 45 L. Ed. 1165, the court says:

"The due process clause of the fourteenth amendment does not necessitate that the proceeding in the state court should be by a particular mode, but only that there shall be a regular course of proceedings, in which notice is given of the claim asserted, and an opportunity afforded to defend against it."

The Supreme Court of Rhode Island, in Re Petition of Michael Gannon, 16 R. I. 537, 18 Atl. 159, 5 L. R. A. 359, 27 Am. St. Rep. 759, being a petition for habeas corpus praying for discharge from confinement in an insane asylum, in holding the statute void, as in conflict with the fourteenth amendment to the Constitution of the United States, said:

"Without attempting to define the exact meaning of the phrase 'due process of law,' it suffices for the present inquiry to say that it means at least some legal procedure in which the person proceeded against, if he is to be concluded thereby, shall have an opportunity to defend himself. The sections of chapter 74 referred to do not provide such a procedure. The only safeguard against an improper commitment which they afford is the certificate of two practicing physicians of good standing, a certificate which may be given entirely ex parte.

Bailey on Habeas Corpus, vol. 1, page 436, says:

"It is almost universally held that the person proceeded against must have notice of the proceedings to give validity to an adjudication against him."

That the relator was committed to the asylum without due process of law would seem to be clear, both on principle and under the authorities. The right to notice and a hearing, and an opportunity to defend, before one can be deprived of his liberty, which is one of the greatest natural rights of man, would seem to be a fundamental proposition based on natural justice. The act of assembly under which the relator is confined seems peculiarly void of any means or opportunity to defend. It lays hold of a person in jail or prison, when committed on a criminal charge less than felony, while the presumption of innocence still exists in his favor, and upon examination of two physicians, who shall certify that he is insane, it becomes the duty of the county commissioners, with the approval of the court of quarter sessions, or a judge thereof, to remove such person to a hospital for the insane, there to be treated at the expense of the county as an indigent insane person, until the proper legal settlement of such indigent insane person can be determined. No notice to the accused, to his relatives, or friends; no hearing, or the right to it; not the slightest opportunity to make defense. While the commitment is to be approved by the court, or a judge thereof, there is no examination before the court, or other investigation provided for. Such approval is perhaps based solely upon the ex parte certificate of the two physicians.

The act, by its title and wording, clearly applies only to indigent insane persons, and yet no method is pointed out by which the indigency of the accused is to be ascertained. The physicians are to make examination and certify as to the sanity or insanity of the party, but no duty is imposed upon them, nor any one in the act, to determine whether such insane person is indigent.

The confinement which follows the commitment is without limitation as to time. No provision is made for a further hearing; no method of discharge; no appeal or writ of error is given. No provision, even, is made for a writ of habeas corpus to test the question of the party's insanity, as most lunacy acts are careful to give. It would be hard to imagine an act of assembly, perhaps conceived in humanitarian motives, which so completely ignores every safeguard for the protection of the liberty of the citizen. Believing, as I do, that the relator's constitutional rights have been violated, the question arises: Shall this court refuse the relief to which she is certainly entitled in some proceeding, before some tribunal?

[3] I fully recognize the limitations upon the power of the federal judges in habeas corpus proceedings, instituted during the progress of

proceedings against the petitioner in a state court, or by or under the authority of a state on account of the very matter presented for determination by the writ of habeas corpus, as outlined and defined by numerous decisions of the Supreme Court of the United States, notably among such decisions being, Ex parte Royall, 117 U. S. 241, 6 Sup. Ct. 734, 29 L. Ed. 868, Reid v. Jones, 187 U. S. 153, 23 Sup. Ct. 89, 47 L. Ed. 116, Drury v. Lewis, 200 U. S. 1, 26 Sup. Ct. 229, 50 L. Ed. 343, Urquhart v. Brown, 205 U. S. 179, 27 Sup. Ct. 459, 51 L. Ed. 760, Glasgow v. Moyer, 225 U. S. 420, 32 Sup. Ct. 753, 56 L. Ed. 1147, and Ex parte Spencer, 228 U. S. 652, 33 Sup. Ct. 709, 57 L. Ed. 1010.

The case of Ex parte Royall, supra, goes further than the more recent cases in sustaining the exercise of power on the part of federal judges in discharging prisoners in custody of a state court. The Supreme Court there held that the Circuit Courts of the United States have jurisdiction in habeas corpus to discharge from custody a person who is restrained of his liberty in violation of the Constitution of the United States, but who at the time is held under state process for trial on an indictment charging him with an offense against the laws of the state; that when a person is in custody under process from a state court of original jurisdiction for an alleged offense against the laws of the state, and it is claimed that he is restrained of his liberty in violation of the Constitution of the United States, the Circuit Court has discretion whether it will discharge him in advance of his trial in the court in which he is indicted; but this discretion should be subordinated to any special circumstances requiring immediate action. After conviction of the accused in the state court, the Circuit Court has still a discretion whether he shall be put to his writ of error to the highest court of the state, or whether it will proceed by writ of habeas corpus summarily to determine whether he is restrained of his liberty in violation of the Constitution of the United States.

In Reid v. Jones, supra, it was said that one convicted for an alleged violation of the criminal statutes of a state, and who contends that he is held in violation of the Constitution of the United States, "must ordinarily first take his case to the highest court of the state, in which the judgment could be reviewed, and thence bring it, if unsuccessful there, to this court by writ of error."

In Drury v. Lewis, supra, an officer and an enlisted soldier in the service of the United States were indicted for murder and held for trial in a state court for having killed a citizen of the state, who was not in the service of the United States, the killing having occurred on property not belonging to or under the jurisdiction of the United States. A writ of habeas corpus issued out of the Circuit Court, and on hearing the petitioners were remanded; the court declining to wrest them from the custody of the state officers in advance of their trial in the state courts. The Supreme Court said that, in cases of the custody by state authorities of one charged with crime, the settled and proper procedure was for a Circuit Court of the United States not to interfere by habeas corpus, "unless in cases of peculiar urgency, and that instead of discharging they will leave the prisoner to be dealt with by the courts of the state; that after a final determination of the case by the state

·court, the federal courts will even then generally leave the petitioner to his remedy by writ of error from this court. The reason for this course is apparent. It is an exceedingly delicate jurisdiction given to the federal courts by which a person under an indictment in a state court and subject to its laws may, by the decision of a single judge of the federal court, upon a writ of habeas corpus, be taken out of the custody of the officers of the state and finally discharged therefrom, and thus a trial by the state courts of an indictment found under the laws of a state be finally prevented."

In Urquhart v. Brown, supra, Brown was charged in the state court of the state of Washington with the crime of murder, and was tried and acquitted on the ground of insanity. In accordance with a statute of that state, he was thereupon committed by the court to the jail of the proper county until further order of the court. The accused made an original application to the Supreme Court of Washington for a writ of habeas corpus, alleging unlawful imprisonment, in that the statute under which he was held violated the fourteenth amendment to the Constitution of the United States, and also the Constitution of the state of Washington. The Supreme Court held the statute constitutional and denied the application for discharge. Brown then sued out a writ of habeas corpus in the Circuit Court for the Western District of Washington, and after hearing thereon the Circuit Judge held that the statute, although constitutional, was not properly administered in rendering the judgment, and that he had been committed without due process of law, and granted his discharge. This judgment was reversed by the Supreme Court. That court said:

"If the applicant felt that the decision, upon habeas corpus, in the Supreme Court of the state was in violation of his rights under the Constitution or laws of the United States, he could have brought the case by writ of error directly from that court to this court."

In other words, he had a complete remedy by writ of error from the judgment rendered against him in the state court.

In Ex parte Spencer, supra, the defendant was indicted, tried, and convicted of conspiracy to cheat and· defraud, and was sentenced to pay a fine and undergo imprisonment in the penitentiary. Defendant petitioned the Supreme Court for a writ of habeas corpus, which petition was refused. He then applied to the judge of the District Court for a writ of habeas corpus, raising the same question, which was refused. He then filed a·motion for leave to file an application for a writ of habeas corpus in the Supreme Court of the United States, which was refused. The court said:

"Petitioners certainly had ample opportunity to avail themselves of the objections they make to the validity of the sentences. They had it when they were brought up for sentence. They had it when they appealed to the superior court. They had it when they applied to the Supreme Court to allow an appeal from the judgment of the superior court. And this would have been the orderly course, and efficient as orderly. It would have been orderly, because their objections would then have been made in the courts ordained to administer the law applicable to the crime; efficient, because if error was committed against constitutional rights it could have been reviewed and corrected by this court. And surely even a defendant in a criminal case cannot

complain if in the tribunals in which he is arraigned for crime he has opportunity to deny the crime, require its proof, resist unjust or excessive punishment and have a review of all rulings through the successive state tribunals and finally in the ultimate court of review upon questions under the Constitution of the United States. This being a defendant's opportunity, we have declared many times that it would only be an exceptional case when we should interfere by habeas corpus with the course or final administration by the state courts of the criminal justice of a state."

The conclusion naturally following from all these decisions is that where one is under imprisonment by virtue of the process of a state court, who claims to be restrained in violation of the Constitution or laws of the United States, the federal courts will not ordinarily interfere, leaving the petitioner to obtain redress through the state tribunals, and failing there, by writ of error to the Supreme Court of the United States, for redress may be had in the ordinary course of procedure by appeal, writ of error, or other direct method of review. The controlling reason for this position is stated in Ex parte Royall, supra:

"To give preference to such principles and methods of procedure as shall serve to conciliate the distinct and independent tribunals of the states and of the Union, so that they may co-operate as harmonious members of a judicial system coextensive with the United States, and submitting to the paramount authority of the same Constitution, laws, and federal obligations."

In harmony with this position, Chief Justice Gibson of the Supreme Court of Pennsylvania, in Commonwealth v. Lecky, 1 Watts, 66, 26 Am. Dec. 37, said:

"If, then, the officer cannot allege error in the process, how can the prisoner do so consistently with the common-law principle that the proceedings of a court of competent jurisdiction are not to be reversed or set aside by a collateral proceeding, where redress may be had by appeal, writ of error, or any other direct means of review?"

Recognizing the binding force of these decisions, the question then arises: Has the relator any adequate redress from the imprisonment of which she complains, by appeal, writ of error, or other means of review? It was held in Clearfield County v. Cameron Township, 135 Pa. 86, 19 Atl. 952, that a commitment to the asylum for the insane of one who is acquitted of a criminal offense on the ground of insanity existing at the time of the alleged offense is not a sentence of the court on the verdict. The commitment of the relator in this case could scarcely be said to be the result of a judicial proceeding. The proceeding is apparently instituted by the county commissioners, and the court's approval is given to their commitment.

[4] I am of opinion that the commitment under which the relator was confined in the asylum was not such final order, judgment, sentence, or decree as entitled her to an appeal. In this case it is true that the relator had a hearing before a judge of the court of common pleas on a writ of habeas corpus; but, as hereinbefore stated, only the question of the relator's sanity was passed upon. The court declined to consider the legality of the proceedings under which she was committed, on the ground that that was the province of the court of quarter sessions alone. The issue raised here has not been passed upon by any tribunal. If the relator considered herself aggrieved by the decision

221 F.—48

of the court in the habeas corpus proceeding, she had no appeal therefrom. It is stated in Church on Habeas Corpus, § 396:

"In the federal courts of the United States, the doctrine of res judicata does not apply to an order remanding the prisoner; and the prevailing doctrine in the state courts, in the absence of statutory provisions, is that a judgment remanding a prisoner on habeas corpus is not appealable, or subject to review, and that the doctrine of res judicata has no application. The prisoner is entitled to the opinion of all the courts as to his freedom, and in his applications for the writ of habeas corpus may exhaust the entire judicial power of the state. Whether the decision on the writ is the simple order of a judge, or the determination of a court, the effect is the same. In neither case is there any such final judgment as will sustain an appeal or writ of error."

That no appeal lies in such a case has been distinctly ruled by the Supreme Court of Pennsylvania. Russell v. Commonwealth, 1 Pen. & W. 82; Clark v. Commonwealth, 29 Pa. 129; Commonwealth v. McDougall, 203 Pa. 291, 52 Atl. 254; Commonwealth v. Superintendent of Prison, 220 Pa. 408, 69 Atl. 916, 21 L. R. A. (N. S.) 939.

It would therefore appear that the relator has no remedy by appeal from her unlawful commitment, or any appeal from the decision of the court remanding her upon the writ of habeas corpus. It is true that she might obtain a writ of habeas corpus from an appellate court of the state of Pennsylvania. The power to grant a writ of habeas corpus is a common-law power, existing both before and since the passage of the Habeas Corpus Act of 1785, in a court of record, with extensive appellate jurisdiction. Commonwealth v. Gibbons, 9 Pa. Super. Ct. Rep. 527. But, assuming that relator might obtain a writ of habeas corpus from one of the appellate courts of the state, is there any principle of comity requiring this court to refuse the relator relief, when application has been made here, merely because an appellate state court may also have the power to grant like relief? I think not. The relator, while confined in a state institution, is not under indictment awaiting trial, where all questions, constitutional and otherwise, may be heard and determined, and, if adverse to the defendant, corrected by a writ of review. She is not confined on any appealable order, judgment, sentence, or decree of any court of the state. She is imprisoned by virtue of proceedings under an act of assembly of a state, which has deprived her of her liberty without due process of law. The proceedings are not simply voidable, but absolutely void, and against such void proceedings, under all the authorities, habeas corpus will grant relief.

The court is not passing here on the question of the relator's sanity, but on the question of the legality of the proceedings by which she is confined in the asylum; and inasmuch as I am of the opinion that her incarceration is in violation of her rights under the national Constitution, I do not feel at liberty, under the facts and the law of the case, to deny her prayer for relief, addressed to a federal tribunal.

The relator is therefore discharged from the imprisonment in the City Home at Marshalsea, but is remanded to the custody of the sheriff of Allegheny county to answer the charge of assault and battery, upon which she was confined in the jail of Allegheny county at the time of her commitment to the asylum.