## *In re* DUNCAN, Petitioner.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF TEXAS.

No. 1174. Argued December 17, 1890. — Decided March 30, 1891.

When the trial court of a State has jurisdiction and power, under state laws, to determine the law applicable to the case of an indictment and trial for murder, and the prisoner, when convicted, has an appeal to an appellate court of the State, of which he avails himself, the Circuit Court of the United States for the District, if applied to for a writ of *habeas corpus*, pending the appeal, upon the ground that the proceedings are in violation of provisions of the Constitution of the United States, may properly decline to interfere.

A statute duly certified is presumed to have been duly passed until the contrary appears.

When, in the trial of a cause, an objection is taken that the legislature failed to comply with the provisions of the Constitution in the enactment of a statute, it should be so presented that the adverse party may have opportunity to controvert the allegations, and to prove by the record due conformity with the constitutional requirements.

Whether a state statute has or has not binding force, by reason of compliance or non-compliance with the provisions of the constitution of the State, is a question for the state courts to determine.

THE case, as stated by the court, was as follows:

Dick Duncan was indicted by the grand jury of Maverick County, Texas, for the crime of murder, and having been arraigned, was tried in the District Court of that county and State, found guilty, and his punishment assessed at death, and the court entered judgment accordingly, from which he appealed to the Court of Appeals. He was thereupon committed to the jail of Bexar County upon the ground that there was no safe jail in Maverick County, McCall, the appellee here, being sheriff of Bexar County at the time.

While the case was pending on appeal and on the 10th of April, 1890, Duncan filed in the Circuit Court of the United States for the Western District of Texas his petition for a writ of *habeas corpus*, to be discharged from custody, on the ground that he was deprived of his liberty and about to be

deprived of his life in violation of the Constitution of the United States.

The petition set forth the finding of four indictments for murder against petitioner, his arrest, trial, conviction and sentence, and copies of the record were attached.

It was alleged that petitioner was deprived of his liberty without due process of law, and denied the equal protection of the laws, because the "Penal Code and Code of Criminal Procedure" of the State of Texas, now and since July 24, 1879, recognized as law, under which his alleged trial was conducted, were not enacted by the legislature of the State of Texas, and that the definitions and rules in the supposed codes were materially different from the definitions and rules of procedure prevailing before their alleged adoption.

The petition then averred that the codes failed of enactment on these grounds in substance: That the bill which contained them was not referred to a committee and reported on in the house, and was not read on three several days in each house, as required by the state constitution; and although the legislature dispensed with the reading of the printed matter *in extenso*, and provided for a consideration on three several days, the bill was not so considered; that the two houses of the legislature never agreed to or came to a common legislative intent on the passage of the bill; that neither house of the legislature kept a journal of its proceedings as required; that an abortive attempt was made to dispense with enrolment, and there was no enrolment of the bill, or any substitute therefor; that there is no record in existence by which the accuracy of said statutes can be verified; that the legislature attempted to delegate legislative power to one Lyle, who proceeded to embody the alleged codes into a printed book, the volume known as the "Revised Statutes of Texas;" that the said volume is not a copy of or identical with the bill said to have been passed embodying them, but is widely variant therefrom, and from the original bill on file in the office of the Secretary of State; that the alleged law set out in the Revised Statutes was never considered or passed by the legislature of the State, nor consid-

ered by the governor, and did not become a law; that the printing, binding, distribution and codification of the volume known as the Revised Statutes was never duly or legally authorized; and that the entire system of penal and civil laws is involved.

It was further alleged that the Court of Appeals of Texas was organized on the 6th of May, 1876, and that the judges selected to sit upon the bench of that court were elected on the third Tuesday in February, prior to the organization of the court; that the present presiding judge of the court was at that time elected and has since continuously succeeded himself; that the court is interested in the determination of the questions involved, because the statutes supposed to have been adopted attempted to make new and important provisions for the exercise of jurisdiction and judicial power by the court, and the civil statutes, which fixed the salaries of judges, determined the jurisdiction of certain judicial districts, and regulated the method of election of judges in the State, were attempted to be enacted at the same time and mainly in the same manner as above set forth; that a decision by any court of Texas upon the questions presented would tend to disturb the alleged and recognized legal system and code of laws of said State, and cloud the title to office of the judges of the State, and subject the court to severe criticism; and that petitioner has cause to fear that the courts of Texas would be unduly influenced to his prejudice.

The differences between the prior statutes and codes and those of 1879, which petitioner claimed operated to abridge his rights, privileges and immunities, as a citizen of the United States, and to deprive him of due process of law, seem, as he sets them up, to be that by the prior law the punishment of murder in the first degree was death, and the jury could not assess the punishment, so that imprisonment could not be inflicted if the crime were of that degree, whereas this could be done under the later law; that by the prior law grand juries were composed of not less than sixteen persons, while by the later, twelve was the number, though this was as prescribed by sec. 13, art. V of the Constitution; that chal-

lenges to the array were allowed under the prior law for corruption in the summoning officer, and the wilful summoning of jurors with the view of securing conviction, whereas, under the later law, where the jurors called upon the trial had been selected by jury commissioners, in accordance with a law to that effect enacted in 1876, the challenge to the array was not allowed, but it was not averred that petitioner attempted to challenge the array ; that under the prior law the indictment must charge the offence to have been "felonious" or done "feloniously," whereas, under the Codes of 1879, these words might be omitted as they were in this instance ; and that under the prior law sheriffs were prohibited from summoning any person as a juror found within the court-house or yard, if jurors could be found elsewhere, but that some of the jurors who tried him were so summoned, although other jurors could have been found in the county.

The sheriff of Bexar County filed exceptions to the jurisdiction of the Circuit Court, and assigned, among other reasons, that the petition showed upon its face that the matters in controversy did not arise under the Constitution, laws or treaties of the United States, nor did the adjudication or determination of the same involve a construction thereof ; but that the matters arose solely under the constitution and laws of the State of Texas, and their determination involved exclusively the construction of the State constitution and laws ; that it did not appear from the petition that petitioner was restrained of his liberty and illegally held in custody for an act done or omitted in pursuance of a law of the United States, or of an order, process or decree of a court thereof, or that he was in custody in violation of the Constitution or of a law or treaty of the United States ; and that the Circuit Court had no power or jurisdiction to release petitioner from custody, inasmuch as he was held by a duly authorized and qualified officer of the State, under and by virtue of a judgment of a court of the State, in and by which he had been tried, convicted and adjudged guilty of a crime against the laws of the State, as appeared from the facts set forth in the petition. And the respondent further excepted, upon the ground that the petition

was wholly inadequate and insufficient to authorize the relief sought, because it appeared from its allegations that the petitioner, was arrested upon an indictment, charging him with the commission of the crime of murder, in violation of the laws of the State; that he was arraigned and duly tried and convicted of the crime as charged, and was by the court, in accordance with the verdict, sentenced, and was now held to await the execution of that sentence, unless reversed by the Court of Appeals of Texas, wherein the case is now pending on appeal from the court below; and that even if the validity of the present Penal Code and Code of Criminal Procedure of Texas were legitimately assailed, yet the petition was wholly insufficient, because there was no allegation that the provisions of the old code, which in such an event would have remained in force, were in the least dissimilar from the present, or that he would have been tried in a different way, or that he would have or might have received a different or lesser punishment.

May 14, 1890, the Circuit Court, on hearing the application, dismissed the petition and denied the writ. From that judgment petitioner appealed to this court.

*Mr. T. J. McMinn* and *Mr. A. H. Garland* for appellant. *Mr. H. J. May* was with them on the brief.

*Mr. J. S. Hogg*, Attorney General of the State of Texas, and *Mr. Richard H. Harrison*, Assistant Attorney General, for appellee.

Mr. CHIEF JUSTICE FULLER delivered the opinion of the court.

By section 1, Article V, of the constitution of Texas, the judicial power of the State was vested "in one Supreme Court, in a Court of Appeals, in District Courts, in county courts, in commissioners' courts, in courts of justices. of the peace and in such other courts as may be established by law."

By section 3, the jurisdiction of the Supreme Court was confined to civil cases; by section 6 it was provided that "the Court of Appeals shall have appellate jurisdiction, coexten-

sive with the limits of the State in all criminal cases, of what-
ever grade;" and by section 8, that "the District Courts
shall have original jurisdiction in criminal cases of the grade
of felony."

The District Court of Maverick County was created and
organized by an act of the legislature of Texas, approved
March 25, 1887. Laws of Texas, 1887, p. 46. It had juris-
diction to try the offence of which petitioner was accused, and
acquired jurisdiction over his person and the offence charged
against him, through the indictment and his arraignment
thereon. He was charged with the commission of the crime
of murder, which he did not deny was a crime against the
laws of Texas, and that the penalty therefor was death.
What he complained of in his application to the Circuit
Court, was, that in the matter of indictment and trial, he had
been subjected to the provisions of statutes which had not
been enacted in accordance with the state constitution. The
District Court had jurisdiction and the power to determine
the law applicable to the case, and if it committed error in its
action, the remedy of petitioner was that of which he availed
himself, namely, an appeal to the Court of Appeals of the
State. Under these circumstances the Circuit Court properly
declined to interfere. *Ex parte Royall,* 117 U. S. 241, 245,
255; *Ex parte Fonda,* 117 U. S. 516. Nor does the contention
of counsel in respect of the Court of Appeals justify any other
conclusion.

Under sections 5 and 6 of Article V of the state constitu-
tion, the Court of Appeals was created as a court of last resort
in criminal matters, its powers and jurisdiction defined, and
the salary, tenure of office and qualifications of its judges pre-
scribed. The determination of the validity or invalidity of
the Civil or Penal Codes of 1879 would in no respect affect
that court in these particulars, if the extraordinary claim of
counsel in this regard were entitled to any consideration what-
ever in this proceeding.

Unquestionably it is a fundamental principle that no man
shall be judge in his own case, and the constitution of Texas
forbids any judge to sit in any case wherein he may be inter-

ested, or where either of the parties may be connected with him by affinity or consanguinity within such degree as may be prescribed by law, or where he shall have been counsel in the case; and specific provision is made for commissioning persons to hear and determine any case or cases in place of members of the Supreme Court or Appellate Court, who may be therein thus disqualified. Const. Art. V, sec. 11. But no such question arises, or could arise, upon this record.

The constitution of the State of Texas was submitted by the convention which framed it to a vote of the people, on the third Tuesday of February, 1876, for their ratification or rejection, by an ordinance passed for that purpose; and it was provided that, if ratified, it should become the organic and fundamental law of the State on the third Tuesday of April following; and also that, at the same time that the vote was taken upon the constitution, there should be a general election held throughout the State for all state, district, county, and precinct officers created and made elective by the instrument; and that, if the constitution were ratified, certificates of election should be issued to the persons chosen. Jour. Const. Con. 772, 780.

The constitution was ratified, and the petition alleged that the judges of the Court of Appeals were elected to their positions on the third Tuesday in February, 1876, and that the Court of Appeals was organized on the 6th of May of that year, from which counsel argues that the conclusion should be drawn that the present members of that court are not even officers *de facto*. The suggestion requires no observations here.

We repeat, that as the District Court had jurisdiction over the person of the petitioner and the offence with which he stood charged, it had jurisdiction to determine the applicatory law, and this involved the determination of whether particular statutory provisions were applicable or not, and hence, if the question were properly raised, whether a particular statute or statutes had been enacted in accordance with the requirements of the state constitution:

It is unnecessary to enter upon an examination of the rul-·

ings in the different States upon the question whether a statute duly authenticated, approved and enrolled can be impeached by resort to the journals of the legislature or other evidence, for the purpose of establishing that it was not passed in the manner prescribed by the state constitution. The decisions are numerous, and the results reached fail of uniformity. The courts of the United States necessarily adopt the adjudication of the state courts on the subject. *South Ottawa* v. *Perkins*, 94 U. S. 260; *Post* v. *Supervisors*, 105 U. S. 667; *Railroad Co.* v. *Georgia*, 98 U. S. 359.

In *Town of South Ottawa* v. *Perkins*, where the existence of a statute of Illinois was drawn in question, Mr. Justice Bradley, delivering the opinion of the court, said, 94 U. S. 268: "As a matter of propriety and right, the decision of the state courts on the question as to what are the laws of a State is binding upon those of the United States. But the law under consideration has been passed upon by the Supreme Court of Illinois, and held to be invalid. This ought to have been sufficient to have governed the action of the court below. In our judgment it was not necessary to have raised an issue on the subject, except by demurrer to the declaration. The court is bound to know the law without taking the advice of a jury on the subject. When once it became the settled construction of the constitution of Illinois that no act can be deemed a valid law unless, by the journals of the legislature, it appears to have been regularly passed by both houses, it became the duty of the courts to take judicial notice of the journal entries in that regard. The courts of Illinois may decline to take that trouble, unless parties bring the matter to their attention; but, on general principles, the question as to the existence of a law is a judicial one, and must be so regarded by the courts of the United States. This subject was fully discussed in *Gardner* v. *The Collector*, 6 Wall. 499. After examining the authorities, the court in that case lays down this general conclusion: 'That whenever a question arises in a court of law of the existence of a statute, or of the time when a statute took effect, or of the precise terms of a statute, the judges who are called upon to decide it have a right to resort to any

source of information which in its nature is capable of conveying to the judicial mind a clear and satisfactory answer to such question; always seeking, first, for that which in its nature is most appropriate, unless the positive law has enacted a different rule.' 6 Wall. 511. Of course, any particular State may, by its constitution and laws, prescribe what shall be conclusive evidence of the existence or non-existence of a statute; but, the question of such existence or non-existence being a judicial one in its nature, the mode of ascertaining and using that evidence must rest in the sound discretion of the court on which the duty in any particular case is imposed."

And it has been often held by state courts that evidence of the contents of legislative journals, which has not been produced and made part of the case in the court below, will not be considered on appeal. *Illinois Central Railroad Co.* v. *Wren*, 43 Illinois, 77; *Bedard* v. *Hall*, 44 Illinois, 91; *Grob* v. *Cushman*, 45 Illinois, 119; *Hensoldt* v. *Petersburg*, 63 Illinois, 157; *Auditor* v. *Haycraft*, 14 Bush, 284; *Bradley* v. *West*, 60 Missouri, 33; *Coleman* v. *Dobbins*, 8 Indiana, 156.

The distinction is recognized between matters of which the court will take judicial cognizance "immediately, *suo motu*," and those which it will not notice "until its attention has been formally called to them." Gresl. Eq. Ev. 292, 306. As to the last, Mr. Gresley says: "It will not point out their applicability nor call for them, but if they are once put in by either party it will investigate them, and will bring its own judicial knowledge to supply or assist their proof, and will then adopt them as its own evidence independently of the parties." *Jones* v. *United States*, 137 U. S. 202, 216.

As a statute duly certified is presumed to have been duly passed until the contrary appears, (a presumption arising in favor of the law as printed by authority, and in a higher degree, of the original on file in the proper repository,) it would seem to follow that wherever a suit comes to issue, whether in the court below or the higher tribunal, an objection resting upon the failure of the legislature to comply with the provisions of the constitution, should be so presented that the adverse party may have opportunity to controvert the allega-

tions and to prove by the record due conformity with the constitutional requirements. *People* v. *Supervisors of Chenango*, 8 N. Y. (4 Selden) 317, 325.

By the constitution of Texas, each house of the legislature must keep a journal of its proceedings and publish the same, and the yeas and nays of either house on any question shall, at the desire of three members present, be entered on the journals, (Art. III, sec. 12;) no law shall be passed except by bill, and no bill shall have the force of law until it has been read on three successive days in each house and free discussion allowed thereon, but in case of imperative public necessity, (which necessity shall be stated in a preamble or the body of the bill,) four-fifths of the house in which the bill may be pending may suspend this rule, the yeas and nays being taken on the question of suspension, and entered upon the journal, (secs. 30, 32;) no bill shall be considered unless it has first been referred to a committee and reported thereon; and no bill shall be passed which has not been presented, referred and reported at least three days before final adjournment, (sec. 37;) the presiding officer of each house shall in the presence of the house over which he presides, sign all bills, and the fact of signing shall be entered on the journals, (sec. 38;) no law passed by the legislature, except the general appropriation act, shall take effect or go into force until ninety days after the adjournment of the session at which it was enacted, unless in case of an emergency the legislature by a vote of two-thirds otherwise direct, said vote to be taken by yeas and nays and entered upon the journals, and the emergency to be expressed in a preamble or the body of the act. (Sec. 39.)

By the law prior to 1876, the journals of the respective houses were required to be furnished to the public printer for the purpose of being printed, by the clerical officers of each house, (Paschall's Dig. § 4872;) and the Secretary of State was required to distribute the printed journals, (Id. § 5092;) and similar provision was made by the act of June 27, 1876, (Laws Texas, 1876, p. 36,) as also by the Revised Statutes of 1879, (Rev. Stats. p. 577, § 4012 *et seq.*) When printed, the manuscript journals were to be returned and filed in the archives

of the legislature.   Paschall, § 4872; Laws Texas, 1876, p. 36.
It was the duty of the Secretary of State to keep, publish and
distribute the laws.   Paschall's Dig. §§ 5091, 5092, 4872 *et seq.*;
Laws Texas, 1876, pp. 35, 313; Rev. Stats. 1879, pp. 394, 577,
§ 2722 *et seq.*   ·

The Revised Statutes of Texas containing the codes in ques-
tion were officially published in 1879, with the certificate of
the Secretary of State as to the date when the law enacting
them went into effect, and that the volume was a true and
correct copy of the original bills on file in his department.
For eleven years prior to the conviction of Duncan, these
codes had been recognized and observed by the people of
Texas; had been amended by the legislature, and republished
under its authority; and their provisions had been repeatedly
construed and enforced by the courts as the law of the land.

In *Usener* v. *The State*, 8 Texas, App. 177, the validity of
the Penal Code in respect of its adoption by the legislature
was passed upon and the law upheld; and that case was
quoted with approval in *Ex parte Tipton*, 28 Texas, App.
438, a decision rendered as late as February, 1890.   This de-
cision ruled that an authenticated statute should be regarded
as the best evidence that the required formalities were observed
in its passage, and that. the courts would not exercise the
power of going behind it and inquiring into the manner of its
enactment; and *Blessing* v. *Galveston*, 42 Texas, 641; *Central
Railway Co.* v. *Hearn*, 32 Texas, 546; and *Day Co.* v. *The State*,
68 Texas, 526, were cited in support of the proposition.   In one
of these cases it was decided that the judicial department
should not disregard and treat as a nullity an act of the legis-
lature, because the journals of one or both houses failed to
show the passage of the bill in strict conformity with all the
directions contained in the constitution; and in another, that
it would be conclusively presumed that a bill had been referred
to a committee and reported on before its passage, as required
by the constitution.

The language of the court in *State* v. *Swift*, 10 Nevada, 176,
was quoted approvingly in *Usener* v. *The State*, and repeated
in *Ex parte Tipton :* " Where an act has been passed by the

legislature, signed by the proper officers of each house, approved by the governor, and filed in the office of the secretary of state, it constitutes a record which is conclusive evidence of the passage of the act as enrolled. Neither the journals kept by the legislature, nor the bill as originally introduced, nor the amendments attached to it, nor parol evidence, can be received in order to show that an act of the legislature, properly enrolled, authenticated, and deposited with the secretary of state, did not become a law. This court, for the purpose of informing itself of the existence or terms of a law, cannot look beyond the enrolled act, certified to by those officers who are charged by the constitution with the duty of certifying and with the duty of deciding what laws have been enacted."

In Usener's case, the court declared that, although not feeling in duty bound to do so, yet it had nevertheless examined the journals of the two houses, with regard to the bill entitled "An act to adopt and establish a Penal Code and a Code of Criminal Procedure for the State of Texas," and arrived at the conclusion that the act had received the legislative sanction in strict conformity with the constitution, so that if driven to such examination, the court was unhesitatingly of opinion that there would be no difficulty in the way of establishing that fact by them in every essential particular.

It is insisted that the extent of the disregard of constitutional requirements was not fully developed in that case, and that its authority was overthrown by *Hunt* v. *The State*, 22 Texas, App. 396. But we are not called on to conclude how this may be or to anticipate the ultimate judgment of the courts of Texas, if they consider the controversy still an open one.

If the question of the invalidity of the codes was presented to the District Court of Maverick County, it must be assumed that it adjudged in favor of their validity, and as the case has been carried to the Court of Appeals, that it will there be adjudicated in accordance with the law of the State, and when so determined it is entirely clear that that adjudication could not be reviewed by the Circuit Court, or by us, on *habeas corpus*. And the result must be the same if the question has not been raised by the petitioner in the state courts.

We may remark in conclusion that the magnitude of the operation of the objection to these statutes does not affect the principles by which the result is reached. This is not the case of a system of laws attacked· upon the ground of their invalidity as the product of revolution.

By the Constitution, a republican form of government is guaranteed to every State in the Union, and the distinguishing feature of that form is the right of the people to choose their. own officers for governmental administration, and pass their own laws in virtue of the legislative power reposed in representative bodies, whose legitimate acts may be said to be those of the people themselves; but, while the people are thus the source of political power, their. governments, National and State, have been limited by written constitutions, and they have themselves thereby set bounds to their own power, as against the sudden impulses of mere majorities. |

In *Luther* v. *Borden*, 7 How. 1, it was held that the question which of the two opposing governments of Rhode Island, namely, the charter government, or the government established by a voluntary convention, was the legitimate one, was a question for the determination of the political department, and when that department had decided, the courts were bound to take notice of the decision and follow it; and also that, as the Supreme Court of Rhode Island, holding constitutional authority not in dispute, had decided the point, the well-settled rule applied that the courts of the United States adopt and follow the decisions of the state courts on questions which concern merely the constitution and laws of the State. Mr. Webster's argument in that case took a wider sweep, and contained a masterly statement of the American system of government, as recognizing · that the people are the source of all political power, but that as the exercise of governmental powers immediately by the people themselves is impracticable, they must be exercised by representatives of the people; that the basis of representation is suffrage; that the right of suffrage must be protected and its exercise prescribed by previous law, and the results ascertained by some certain rule; that through its regulated exercise each man's power tells in the constitution.

of the government and in the enactment of laws; that the people limit themselves in regard to the qualifications of electors and the qualifications of the elected, and to certain forms for the conduct of elections; that our liberty is the liberty secured by the regular action of popular power, taking place and ascertained in accordance with legal and authentic modes; and that the Constitution and laws do not proceed on the ground of revolution or any right of revolution, but on the idea of results achieved by orderly action under the authority of existing governments, proceedings outside of which are not contemplated by our institutions. Webster's Works, vol. 6, p. 217.

Discursive as are the views of petitioner's counsel, no violation of these fundamental principles in this instance is or could be suggested.

The State of Texas is in full possession of its faculties as a member of the Union, and its legislative, executive and judicial departments are peacefully operating by the orderly and settled methods prescribed by its fundamental law. Whether certain statutes have or have not binding force, it is for the State to determine, and that determination in itself involves no infraction of the Constitution of the United States, and raises no Federal question giving the courts of the United States jurisdiction.

We cannot perceive that petitioner is being otherwise dealt with than according to the law of the land.

The judgment of the Circuit Court is                    *Affirmed.*