## OPINION TO THE GOVERNOR.

AUGUST 23 as of AUGUST 22, 1962.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

Opinion requested by his Excellency, the Governor, on certain questions of law relating to resolutions adopted by the general assembly and dealing with reapportionment of house of representatives. Questions answered in opinions which follow.

August 22, 1962

To His Excellency John A. Notte, Jr.
    Governor of the State of Rhode Island
        and Providence Plantations

We have received from Your Excellency, pursuant to the provisions of section 2 of article XII of amendments to the constitution of this state, a request for our written opinion on certain questions of law relative to the provisions of two resolutions adopted by the general assembly.

We are advised by Your Excellency that the first of such resolutions, being House Resolution 1001 (August 1962 session), creates a special commission consisting of seven members whose duties relate to the reapportionment of the house of representatives as specifically set forth in H.R. 1002, a copy of which was attached to your letter.

It appears from the last-mentioned resolution, which is the only one we need consider, that said commission has been directed by the general assembly to draft for its consideration a minimum of twelve separate and specific legislative measures relating to the apportionment of seats in the house of representatives. Each of the first eleven such proposals constitutes a specific formula upon which a reapportionment act is to be based.

Your Excellency has propounded three questions concerning the constitutionality, federal and state, of the eleven previously-mentioned proposals. In the interest of shortening this opinion we shall merely refer to each proposal by the numerical position assigned to it.

In compliance with our duty under the constitution, we have the honor to submit our opinion on the questions Your Excellency has propounded.

Your first question is whether the several formulas, numbered 1 through 11, inclusive, or any of them, constitute an invidious discrimination so as to be a denial of equal

protection under article XIV of amendments to the United States constitution.

In *Sweeney* v. *Notte,* 95 R. I. 68, this court expressly held that the general assembly, presently confronted with an obligation to reapportion the membership of the house of representatives, could not do so and comply with the *formula* of apportionment contained in article XIII of amendments to the state constitution without achieving an apportionment which would be so invidiously discriminatory as to constitute a denial of the equal protection guaranteed by the United States constitution. The formula in issue provides for a limitation of one hundred members, based on population, and at the same time assures to each of the thirty-nine municipalities of the state a minimum representation of one per cent of the membership of the house.

Without enumerating every possible example which might be shown we pointed in *Sweeney* to a number of instances where the discrimination would run from a ratio of twenty-two to one to a ratio of four to one, which in our opinion would be so unjustly discriminatory as to be invidious.

We further held that the general assembly acting to reapportion the house could, if it chose, retain the limitation of one hundred members and ignore the requirement that every municipality, regardless of sparsity of population, must be represented by at least one member. Alternatively, we held that the general assembly, if it chose, might ignore the limitation of one hundred members and secure minimum representation for every municipality, regardless of population, by greatly expanding the membership of the house.

Moreover, we pointed to a method whereby the general assembly, if it chose, might retain the limitation of one hundred members and at the same time retain municipal representation *generally.*

In referring to the proposed constitutional amendment (adopted April 13, 1962), we implied and now categorically declare that the securing of minimum representation for every municipality, regardless of population, cannot be achieved without a multiple expansion of house members. Furthermore this court implied as we now categorically declare that article XIII of amendments, as modified by our opinion in *Sweeney* v. *Notte, supra,* continues to be the valid, organic law of this state.

A careful analysis of the eleven plans or proposals under consideration discloses that those proposals enumerated 4, 5, 8 and 11 attempt to preserve so much of the obsolete formula contained within article XIII of amendments as to constitute invidious discrimination and a denial of the equal protection guaranteed by the United State constitution.

Although we are unable to comprehend clearly the formula designated as plan 9, we have concluded that any meaningful construction thereof likewise results in a denial of equal protection.

We are therefore of the opinion that as to proposals 4, 5, 8, 9 and 11 our answer must be in the affirmative.

The second question propounded by Your Excellency requests our opinion as to whether any or all of the eleven proposals comply with articles XIII and XVI of amendments to the state constitution.

Having determined that such proposals constitute invidious discrimination and a denial of equal protection, it is immaterial whether they comply with the provisions of our state constitution and therefore need not be further considered.

The proposals designated as plans 6, 7, and 10 in all probability do not result in such invidious discrimination as to constitute a denial of equal protection. They do, however, provide for elections at large which, it has been

held, do not constitute "apportionment" within the accepted meaning of that term. See *Butcher* v. *Rice,* 397 Pa. 158, 170.

Moreover, article XIII of amendments expressly requires the general assembly to apportion the house on the basis of representative districts, the qualified electors residing within each representative district voting for but one candidate.

We are therefore of the opinion that proposals designated 6, 7 and 10 are in violation of article XIII of amendments and that as to these proposals your question must be answered in the negative.

The third question propounded directs our attention to articles IV, V, X, XI and XIII of the Rhode Island constitution and to numerous articles of amendments thereto, and requests our opinion as to the validity of action taken thereon by a house of representatives reapportioned in conformity with any of the several formulas numbered 1 through 11.

All but the first three of such proposals having been found to conflict with either the federal or state constitutions, we are concerned only with a possible invalidity of said first three proposals as the same relate to those provisions of the state constitution to which Your Excellency refers.

A critical study of such constitutional provisions reveals that each of them involves the functions of the house of representatives. We take it to mean therefore that the essence of Your Excellency's question is whether a house of representatives, validly apportioned in accordance with any of the eleven proposals, would be competent to act in compliance with the constitutional provisions to which you refer.

We have heretofore concluded that the first three of the eleven proposals set forth in H.R. 1002 are in compliance

with both the federal and state constitutional requirements of apportionment. Therefore a house of representatives apportioned in accordance with *any one of such formulas* would have jurisdiction to act in all matters entrusted to it by the constitution. Hence our answer to this question with reference to those formulas is in the affirmative.

The provisions of H.R. 1002 further direct said commission to draft legislation "* * * providing that notwithstanding the nomination and election of members of the house of representatives in accordance with existing provisions of the general laws, the vote of each member, so nominated and elected, shall for purposes of passage of any measure by the house or for purposes of voting in grand committee be that fraction or multiple of a vote, to the nearest 1/10th of a vote, as the population in the district of such member bears to 1/100th of the population of the state, and the presence of each member, for purposes of determining the existence of a quorum, to be similarly computed."

Your Excellency has requested our opinion on two questions of law arising from such additional direction.

The first such question inquires whether the computing of votes on a fractional or multiple basis constitutes a denial of equal protection in violation of article XIV of amendments to the United States constitution.

We comprehend no significant legal distinction, in the area of discrimination, between a member of the house casting a full vote therein on behalf of some 8,500 inhabitants and a member casting 1/10th of a vote on behalf of some 850 inhabitants, or less. The result would be the same as if the state were divided into some 850 districts fairly evenly apportioned among the inhabitants.

We are of the opinion therefore that our answer to this question, which is question (4) in your letter, must be in the negative.

The second such question propounded by Your Excellency and numbered (5) in your letter gives rise to a more troublesome and serious proposition. Directing our attention to numerous articles of the state constitution and amendments thereto, you inquire whether action taken by the house of representatives, wherein a fractional or multiple weight was accorded to the vote of each representative on the ratio of the population in his district as the same might relate to the population of the state, would conform to the constitutional provisions to which you refer.

Here, as in the case of the three proposals which provided for elections at large, we are not concerned with article XIV of amendments to the United States constitution. Rather, we are concerned with whether such a computation would conflict with provisions of the state constitution.

A careful study and analysis of such provisions reveal that they speak of a majority, or in some instances two thirds of the *members* of a house wherein each *member* is on a par with all other members.

It is not necessary to burden this opinion with a detailed observation of every applicable provision involved. Among those provisions to which our attention has been called are the following:

Article IV, sec. 6. "Each house shall be the judge of the elections and qualifications of its members; and a majority shall constitute a quorum to do business * * *."

Article IV, sec. 14. "The assent of two-thirds of the members elected to each house of the general assembly shall be required to every bill appropriating the public money or property for local or private purposes."

Article XIII. "The general assembly may propose amendments to this constitution by the votes of a majority of all the members elected to each house. * * *"

Article XI of Amendments, sec. 8. "A quorum of

the grand committee shall consist of a majority of all the members of the senate and a majority of all the members of the house of representatives duly assembled * * *."

Manifestly, the provisions of our state constitution not repugnant to the constitution of the United States continue to be the supreme law of this state, and as such are binding on the co-ordinate branches of government unless or until they are otherwise altered or repealed by the people from whom they derive their reason for being.

It is sufficiently obvious, so as to forego extended discussion, that the principle of fractional or multiple voting is incompatible with the clear intendment of the state constitution, namely, that the house of representatives shall consist of all its *members* as such, and each *member* is entitled to the standing which his membership bears to the whole.

In light thereof, and absent any requirement of the federal constitution that we are obligated to hold otherwise, we are constrained to conclude that the question in issue should be answered in the negative. For convenience of reference in the future, we append hereto a copy of your letter (Appendix A) together with House Resolution 1002 (Appendix B).

FRANCIS B. CONDON
THOMAS J. PAOLINO
WILLIAM E. POWERS

The proliferation of formulas for apportioning the house of representatives revealed by the proposals contained in Your Excellency's request for an advisory opinion suggests that the matter is one of confusion rather than disagreement. This confusion may result in part from a misunderstanding as to the effect of the court's recent decision in *Sweeney* v. *Notte* on the constitutional limitations of the legislative power to apportion that are contained in art. XIII of amendments to the constitution of this state. This

decision, as we understand it, struck down those provisions of art. XIII which constitute a formula, so called, for apportioning the house. Specifically, it vitiated the limitation of the membership of the house to a maximum of one hundred members and the provision that each city and town be entitled to at least one of the members of the house.

In the majority opinion in that case the court said that standing together these limitations prescribe an "apportionment formula which when followed results in a denial of equal protection * * *." The court made it clear, however, that the legislature, when so legislating, is obligated to conform to so much of art. XIII as does not result in a gross debasement of the representation afforded the electorate and went on to say that such debasement "is the inescapable result of representation for every municipality within the limitation of one hundred members." It is our view that the language used in the majority opinion in that case makes it clear that all of the constitutional limitations on the power of the legislature to apportion the house which are contained in art. XIII remain in effect excepting the limitation of the membership to one hundred members and the requirement of representation for each municipality. In other words, while the legislature has been relieved of any requirement to observe either of the limitations constituting the formula of one hundred members and municipal representation in enacting apportionment legislation, the legislation so enacted must comply with the other provisions or limitations of art. XIII which clearly remain in full force and effect.

The situation then is one in which the legislature is without limitation on its power to apportion with respect to the maximum membership of the house and to the securing of representation to each municipality other, of course, than that its enactments be not violative of the equal protection clause of art. XIV of amendments to the

federal constitution. Being of the opinion that this court should not anticipate a legislative incapacity to enact an apportionment statute which, while providing for a maximum of one hundred members, could allow representation for each municipality, we are constrained to disagree with our brothers as to the validity of one of the proposed formulas which conforms to the provisions of art. XIII as it stood prior to the decision in *Sweeney* v. *Notte*.

Confusion as to what will constitute a valid formula for apportionment of the house may also flow from a misconception as to the nature of the representation contemplated in our constitution and consequently as to what would in fact be a valid apportionment within the purview of art. XIII of the amendments thereto as it now stands. Representation within the contemplation of our constitution is a device through which the people assent to the exercise of authority by the government they instituted therein. This concept of representative government postulates the self-evident truths proclaimed in the Declaration of Independence, subject to which governments are instituted among men "deriving their just powers from the consent of the governed * * *."

Representation within the purview of our constitution relates to that classic concept of representative government that inheres in the republican form of government that is secured to the several states by the guarantee clause of the federal constitution, art. IV, sec. 4. Of this form of government the Supreme Court of the United States said: "By the Constitution, a republican form of government is guaranteed to every State in the Union, and the distinguishing feature of that form is the right of the people to choose their own officers for governmental administration, and pass their own laws in virtue of the legislative power reposed in representative bodies, whose legitimate acts may be said to be those of the people themselves; but, while the people are thus the source of political power, their

governments, National and State, have been limited by written constitutions, and they have themselves thereby set bounds to their own power, as against the sudden impulses of mere majorities." *In re Duncan,* 139 U. S. 449, 461.

It is our opinion that the representation contemplated by our state constitution and provided for in art. XIII of amendments thereto is representation that enables the people to give or withhold their assent to the governmental exercise of the law-making power. Such representation can result only from a division of the population into groups, each of which elects one of its own number to membership in a legislative body who, by virtue of such membership, participates fully in the exercise of legislative power for and on behalf of the group from which he was elected. It is the process by which the governed consent to be governed by participation in the governmental process. It is, therefore, our conclusion that any apportionment legislation enacted pursuant to an apportionment formula must produce representation of such character or it is not an apportionment within the purview of art. XIII of amendments.

Because we subscribe completely to the views which we have hereinbefore discussed, we are of the opinion that several of the formulas which are contained in the communication of Your Excellency for an advisory opinion would not, if followed, result in the enactment of an apportionment of representation within the purview of art. XIII or within the contemplation of the constitution generally. For this reason we conclude that these particular formulas should be given no further consideration.

These are the formulas which in Your Excellency's communication are numbered 6, 7, and 10. Each of these formulas contemplates an allocation of multiple representation to districts and the election of such representatives at large within such a district. It appears to us that such an allocation of representation with election at large

within a district would not be an apportionment within the purview of art. XIII of amendments to the state constitution. It is provided therein that the general assembly, in apportioning the house of representatives, shall divide those cities and towns entitled to more than one representative into representative districts. It then specifically provides that "one representative shall be elected from each district by the qualified electors thereof." It is obvious that an apportionment resulting from an adherence to formulas of this kind would not be an apportionment within the provisions of art. XIII which now remain in full force and effect.

We are in agreement with our associates that legislation enacted pursuant to formulas numbered 5, 8, 9, and 11 would be so discriminatory as to be irrational and thereby constitute a denial of equal protection guaranteed by the fourteenth amendment to the constitution of the United States. We also agree with the conclusion of our associates that legislation enacted pursuant to the formulas numbered 1, 2, and 3 would not constitute a discrimination that would amount to a denial of equal protection as guaranteed by the fourteenth amendment to the federal constitution.

However, we do not concur in the conclusion of our associates that an apportionment statute enacted pursuant to the formula numbered 4 would necessarily constitute a denial of equal protection. Formula numbered 4 proposes that the state be divided into one hundred representative districts with the eleven least populated towns being allotted one representative each and the remaining eighty-nine representatives to be allotted on the basis of a population factor determined on the basis of total population of the remaining cities and towns. We do not perceive that to classify the eleven least populated towns of the state so as to give each one representative would result in

a discrimination that would be so irrational as to violate the equal protection clause.

This for the reason that the continued existence of the eleven most sparsely populated communities in the state is a matter within the discretion of the legislature. The legislature has the power to regroup these towns so as to form larger towns that would have a population sufficient to meet an apportionment ratio based upon a division of the state into one hundred districts of reasonably equal population. On the other hand, the legislature may in an exercise of its discretion continue the existence of these small towns as they now are constituted. In so doing, however, it imposes upon the population of these towns, small as it is, the obligations and burdens of maintaining and supporting a town government. We are unable to concede that if the legislature elects to impose upon these small population groups the burden of maintaining a town government it would not be reasonable for the legislature to confer upon each of these towns a full vote in the house of representatives that their representation might be adequate to meet their problems. The disparity between the quantum of representation thus allotted to the eleven towns and that allotted to the eighty-nine remaining districts would not be sufficient, in our opinion, to render the classification so unreasonable as to violate the equal protection clause.

In view of the foregoing we are constrained to say that legislation apportioning the house of representatives enacted pursuant to the formulas numbered 1, 2, 3, and 4 would not constitute a denial of equal protection as guaranteed by the fourteenth amendment to the federal constitution as asked in your first question and would essentially comply with the provisions of art. XIII of amendments to the state constitution as modified by the case of *Sweeney* v. *Notte,* as asked in your second question. We

would further say that a house of representatives constituted under an apportionment statute enacted pursuant to formulas numbered 1, 2, 3, and 4 could act validly pursuant to the constitutional provisions enumerated in your question numbered 3.

We turned to a consideration of the fourth and fifth questions set out in Your Excellency's request for an advisory opinion. The fourth question asks, in substance, whether computing the vote of the membership of the house on a fractional or multiple basis would constitute a denial of equal protection. The basic proposition is that the vote to be cast by each member of the house be weighted in accordance with the quantum of representation, that is, the legislative power, vested in him. We agree with our associates that to so weight the vote of members of the house would not constitute a denial of equal protection. The effect of such a proposal, if carried out in a malapportioned house, is to apportion the house by indirection. It is our opinion that a malapportioned house could, by so weighting the vote of its membership, shield its legislative enactments from attack on the ground that in the enactment thereof certain segments of the electorate were deprived of equality of representation and consequently of equal protection. Therefore, we answer question numbered 4 in the negative.

The fifth question is concerned with the validity of action by the house pursuant to certain enumerated provisions of the state constitution if the vote of the house is to be computed on a fractional or multiple basis. This question obviously posits the present malapportionment of the house. We are therefore constrained to interpret it as asking whether an indirect apportionment of the house through the weighting of the vote of the membership is an apportionment as contemplated by these provisions of our constitution and provided for in art. XIII of the amendments thereto. In our opinion it is not such an ap-

portionment as will comply with art. XIII of the amendments to our state constitution.

Most of the constitutional provisions to which direct reference is made in question numbered 5 provide for specific acts on the part of the legislature that will become effective only with the concurrence of a percentage or designated proportion of the membership of the house. It is clear from these provisions that the constitution contemplates action by a house in which the individual members would have a full vote with which to exercise the legislative power. It is equally clear that art. XIII of the amendments thereto contemplates an apportionment that will so distribute the representation as to vest each member thereof with a full vote with which to exercise that power. It is obvious that such an apportionment cannot be accomplished by the weighting of the vote of the members of the house where in fact the house is malapportioned. We are therefore constrained to answer question numbered 5 in the negative.

THOMAS H. ROBERTS
G. FREDERICK FROST

## APPENDIX A

August 7, 1962

Honorable Francis B. Condon
Chief Justice
Rhode Island Supreme Court
250 Benefit Street
Providence, Rhode Island

Dear Chief Justice Condon:

In accordance with the provisions of Section 2, Article XII of Amendments to the Rhode Island Constitution, I respectfully request the written opinion of the Judges of the Supreme Court upon certain questions of law.

At a special session of the legislature which I have called, commencing today, a resolution was introduced directing that a special commission appointed to report

to the legislature with legislation to reapportion the House of Representatives do so in the form of certain formulas contained in the resolution. The commission was further directed to prepare legislation to authorize computation of votes in the House of Representatives on the basis of fractions or multiples in ratio to the population of the representative district electing the representative so voting.

In the light of the decision of the United States Supreme Court in Baker v. Carr, 369 U. S. 186, and the opinion of the Rhode Island Supreme Court in the case of David F. Sweeney, Jr., et al v. John A. Notte, Jr., Governor, et al, C.Q. No. 643, decided July 24, 1962, a pressing question has arisen as to whether action that has been directed pursuant to any of these formulas would constitute a denial of equal protection under Article XIV of Amendments to the United States Constitution, and whether there would be further compliance with other provisions of the Rhode Island Constitution. Therefore, the opinion of the Judges is respectfully requested as to the following questions of law:

(1) Do the several formulas, numbered 1 through 11, inclusive, or any of them, in H. R. 1002, a copy of which is annexed hereto, constitute "an invidious discrimination" so as to be a denial of equal protection under Article XIV of amendments to the United States Constitution?

(2) If the House of Representatives were to be apportioned in accordance with any of the several formulas, numbered 1 through 11, inclusive, as contained in H. R. 1002, a copy of which is annexed hereto, would the membership of the House of Representatives so constituted be in compliance with the provisions of Articles XIII and XVI of amendments to the Rhode Island Constitution?

(3) Would action under the provisions of the following sections of the Rhode Island Constitution be valid if taken by the House of Representatives constituted pursuant to any of the several formulas,

numbered 1 through 11, inclusive, as contained in H. R. 1002, a copy of which is annexed hereto:

Article IV, Sections 6, 7, 9, 10, 14, 15 and 16.
Article V, Section 2.
Article X, Sections 4 and 5.
Article XI, Section 1.
Article XIII.
*Articles of Amendment*
Article I.
Article IX.
Article XI, Sections 1 and 3 to 9, inclusive.
Article XII, Sections 2 and 5.
Article XIII, Section 1.
Article XV.
Article XVII.
Article XXII.
Article XXVIII, Sections 4 and 5.
Article XXIX, Sections 3, 4 and 7.
Article XXXI, Sections 1 and 2.
Article XXXII, Sections 1 and 2.
Article XXXIII, Section 1.
Article XXXIV, Section 1.
Article XXXV, Section 2.

(4) Does the formula for computing votes on a fractional or multiple basis as contained in H. R. 1002, a copy of which is annexed hereto, constitute a denial of equal protection as required by Article XIV of amendments to the United States Constitution?

(5) Would action by the House of Representatives in which votes were computed on a fractional or multiple basis as contained in H. R. 1002, a copy of which is annexed hereto, be valid for purposes of the following sections of the Rhode Island Constitution:

Article IV, Sections 6, 7, 9, 10, 14, 15 and 16.
Article V, Section 2.
Article X, Sections 4 and 5.
Article XI, Section 1.
Article XIII.
*Articles of Amendment*
Article I.
Article IX.
Article XI, Sections 1 and 3 to 9, inclusive.

Article XII, Sections 2 and 5.
Article XIII, Section 1.
Article XV.
Article XVII.
Article XXII.
Article XXVIII, Sections 4 and 5.
Article XXIX, Sections 3, 4 and 7.
Article XXXI, Sections 1 and 2.
Article XXXII, Sections 1 and 2.
Article XXXIII, Section 1.
Article XXXIV, Section 1.
Article XXXV, Section 2.

For your consideration there are enclosed herewith copies of H. R. 1002 containing the several formulas.

Respectfully submitted,

(signed) JOHN A. NOTTE, JR.
JOHN A. NOTTE, JR.
*Governor*

## APPENDIX B

House Resolution 1002
August          1962

Directing The Commission Created Pursuant To H. R. 1001

"A Resolution Providing For The Appointment Of A Commission To Draft And Report An Act Or Acts To Reapportion The House Of Representatives", To Apply Alternative Formulas For Representation In Drafting Such Acts.

Resolved: That the special commission created pursuant to H. R. 1001 "A Resolution Providing for the Appointment of a Commission to Draft and Report an Act or Acts to Reapportion the House of Representatives", is hereby directed to draft and report in the form of acts, legislation to reapportion the House of Representatives in accordance with each of the following formulas:

(1) To divide the state into 100 districts, each containing approximately 1/100th of the population

of the state without regard to existing town or city boundaries;

(2) To divide the state into 100 districts, providing one (1) representative for each city or town having more than one half of 1/100th of the population of the state, and an additional representative for each 1/100th of such population in excess of the population of the least populated city or town entitled to a single representative, consolidating those cities or towns not thus entitled to a representative into as many districts as would result from dividing the total population of these cities or towns by a factor approximating the population of the least populated city or town entitled to a single representative.

(3) To divide the state into as many districts as would result from allotting a representative to each of the 39 cities and towns, and providing each city and town with representation based on a population factor of not more than twice the population of the least populated municipality.

(4) To divide the state into 100 districts, allotting one (1) district to each of the eleven (11) least populated towns, the remaining districts to be allotted among the remaining twenty-eight (28) cities and towns on a population factor arrived at by subtracting from the total population of the state the population of said 11 towns, and dividing the remainder by 89.

(5) To divide the state into 100 districts, allotting one (1) district to each of the 39 cities and towns, the remaining sixty-one (61) districts to be allotted on a population basis among those towns having a population in excess of 1/61st of the population of the state.

(6) Using the 46 senatorial districts as provided for in Section 22-1-1 of the general laws, as amended by chapters 37 and 118, P. L. 1961, provide for one (1) representative for each 1/100th of the population of the state in each senatorial district, provided each senatorial district shall have at least one (1) representative, the representatives within each senatorial district to run at large within such district.

(7) To divide the state into 25 districts, disregarding existing town or city boundaries, each district to have from three (3) to six (6) representatives, said representatives to run at large within these districts.

(8) To divide the state into 139 representative districts, providing one (1) district for each of the 39 cities and towns, the remaining 100 districts to be allotted on a population basis among those towns having a population in excess of 1/200th of the population of the state.

(9) To divide the state into as many districts as would result from providing one (1) representative for each city and town and an additional representative for each 1% of the population of the state in any city or town in excess of 1.5% of the population of the state.

(10) Using the present counties as representative districts, to provide for the election at large within each of said counties of persons who are nominated from existing representative districts in accordance with existing provisions of the general laws.

(11) To divide the state into as many districts as would result from providing one (1) representative for each city and town having a population of .05% of the state population, one (1) representative for each additional 1½% of the state population in any city or town until such city or town has a total of four (4) representatives, and an additional representative for each city or town for each additional 1% of the population within such city or town.

In addition to the foregoing, the commission is directed to draft legislation providing that notwithstanding the nomination and election of members of the house of representatives in accordance with existing provisions of the general laws, the vote of each member, so nominated and elected, shall for purposes of passage of any measure by the house or for purposes of voting in grand committee be that fraction or multiple of a vote, to the nearest 1/10th of a vote, as the population in the district of such member bears to 1/100th of the population of the state, and the presence of each member, for purposes of determining

the existence of a quorum, to be similarly computed. The commission shall further provide that this computation formula shall not apply to votes in committees of the house of representatives, each representative to be entitled to one vote in committee for purposes of recommending action on legislation.

The commission is authorized and directed to present, in addition to legislation using the foregoing formulas, legislation using such other formulas as it may deem appropriate.