John HITSON, Samuel Moore and William Mills, Plaintiffs,

v.

Madam Agnes BAGGETT, in her official capacity as Secretary of State of the State of Alabama, Honorable George C. Wallace, in his official capacity as Governor of Alabama and Honorable William Baxley, in his official capacity as Attorney General of the State of Alabama, Defendants.

Civ. A. No. 78–15–N.

United States District Court, M. D. Alabama, N. D.

March 8, 1978.

The Constitution provides for the election of the president in the following language:

Each State shall appoint, *in such Manner as the Legislature thereof may direct*, a number of Electors, equal to the whole number of Senators and Representatives to which the State may be entitled in the Congress . . .

.  .  .  .  .

The Electors shall meet in their respective states, and vote by ballot for President . . . and transmit [the tally of their votes] sealed to the seat of the government of the United States, directed to the President of the Senate;— . . The person having the greatest number of votes . . . shall be president, if such number be a majority of the whole number of Electors appointed; and if no person have such majority, then from the persons having the highest numbers . ., the house of representatives shall choose . . ., the votes [being taken] by states . . .

U.S.Const. art. II, § 1, cl. 2, amend. XII.

■ In Alabama, as in nearly every other state, the Legislature has directed that the state's presidential electors be "appoint[ed]" through a statewide popular election. Candidates qualified to run in the state's presidential election submit to appropriate state authorities a list of electors pledged to support their candidacy. The state's presidential contest is really a contest among these slates of electors. A vote for a particular presidential candidate is counted as a vote for the slate of electors pledged to support him. The slate of electors which receives the greatest popular support in the state's presidential election becomes the slate which casts the state's electoral votes.

In their complaints, plaintiffs raise several objections to this system. First, they contend that the nationwide use of the "manner and system" of selecting presidential electors employed in Alabama results in invidious discrimination among the voters of the several states. Plaintiffs contend that, as a result of the nationwide use of

Lea Harris, Montgomery, Ala., for plaintiffs.

William T. Stephens and Ann Downing, Asst. Attys. Gen., State of Alabama, Montgomery, Ala., for defendants.

### MEMORANDUM OPINION

JOHNSON, Chief Judge.

This is a civil rights action brought under 42 U.S.C. § 1983. Jurisdiction is founded on 28 U.S.C. § 1343. Plaintiffs are John Hitson, a citizen of the United States with Indian ancestry, and Samuel Moore and William Mills, citizens of the United States who are black. Defendants include George C. Wallace, Governor of Alabama; William Baxley, Attorney General of Alabama; and Agnes Baggett, Secretary of State of Alabama. Each is sued in his or her official capacity. In their complaint, plaintiffs charge that Alabama's present "manner and system" of selecting presidential electors violates their constitutional rights.

The case is now submitted on defendants' motion to dismiss for failure to state a claim upon which relief can be granted.

this system, when a citizen of a large state casts his vote for president, it carries more "weight" than the vote of a citizen of a small state. This is because, according to plaintiff, his vote is "multiplied" by a larger number of presidential electors than is the vote of the citizen of a small state. Thus, according to plaintiffs, a citizen of a state like California, with 45 electoral votes, has his single vote for president "counted" 45 times, whereas a citizen of a state like Alabama, with only 9 electoral votes, has his presidential vote "counted" only 9 times. Thus, according to plaintiffs, a citizen of a state the size of California has 500 percent more influence in affecting the outcome of the nation's presidential election than does the citizen of a state the size of Alabama.

The Court has serious reservations concerning the logic of plaintiffs' argument. Nevertheless, even were plaintiffs' contentions logically sound, they would not state a good claim for relief. The discrimination of which plaintiffs complain [if it is discrimination] is a product of the constitutional mandate that our president be elected through an "Electoral College." As such, it is a type of "discrimination" specifically sanctioned by the Constitution. *Cf. Williams v. Virginia State Board of Elections*, 288 F.Supp. 622 (E.D.Va.1968) (three-judge ct.), *aff'd mem.*, 393 U.S. 320, 89 S.Ct. 555, 21 L.Ed.2d 516 (1969). Thus, while this "discrimination" may be considered by some to be unfair, it is hardly "unconstitutional."

Second, plaintiffs contend that, because of its statewide and at-large features, Alabama's electoral scheme for the selection of presidential electors discriminates against minority voters. Plaintiffs reason that, if Alabama's presidential electors were selected on a district basis, minority voters, because of their geographic concentration, could control the selection of at least one or more of the state's electors. Under Alabama's present scheme for the election of presidential electors, plaintiffs contend, minority voters do not have a determinative voice as to the selection of any one elector. By not structuring its election for presidential electors on a district basis so as to afford minority voters the opportunity to elect at least one presidential elector, plaintiffs argue, Alabama has violated plaintiffs' constitutional rights.

There is no basis for plaintiffs' argument that plaintiffs' rights as minority citizens have been violated because Alabama has failed to structure its election for presidential electors on a district basis. It may be true, as plaintiffs argue, that if Alabama conducted its election for presidential electors on a district basis, minority voters would have the electoral power to control the selection of at least one presidential elector. However, that Alabama has not chosen to so structure its electoral scheme does not violate plaintiffs' rights. No minority group has a right under the Constitution to insist that state electoral systems be designed, where possible, to give its members electoral control over the selection of persons for particular political offices. See *Whitcomb v. Chavis*, 403 U.S. 124, 91 S.Ct. 1858, 29 L.Ed.2d 363 (1971); *Fortson v. Dorsey*, 379 U.S. 433, 85 S.Ct. 498, 13 L.Ed.2d 401 (1965); *David v. Garrison*, 553 F.2d 923 (5th Cir. 1977). Moreover, a state is free, under the Constitution, to conduct elections on a statewide or at-large basis so long as the electoral system it establishes does not "operate to minimize or cancel out the voting strength of [minority voters]." *Fortson v. Dorsey, supra*, 379 U.S. at 439, 85 S.Ct. at 501; *Whitcomb v. Chavis, supra; David v. Garrison, supra.* Here, there is no contention that Alabama's electoral scheme for the selection of presidential electors operates in such a manner. Accordingly, plaintiffs' claim that the statewide and at-large features of Alabama's election for presidential electors violate the rights of minority voters fails to state a good basis for relief.

Finally, plaintiffs contend that the Constitution prohibits Alabama from selecting presidential electors by popular election. This contention is two-pronged. First, plaintiffs argue that, because the Constitution provides that presidential electors be "appoint[ed]" by the several states, it is unlawful for Alabama to provide for their

selection by popular ballot. Second, plaintiffs contend that the Constitution's guaranty of a republican form of government to the several states is a prohibition on the use of "direct democracy" for the selection of presidential electors. See U.S.Const. art. IV, § 4. Both these contentions are without merit. "[T]he word 'appoint' is not the most appropriate word to describe the result of a popular election . . . [B]ut it is sufficiently comprehensive to cover that mode, and was manifestly used [in Article II, Section 1 of the Constitution] as conveying the broadest power of determination." *McPherson v. Blacker*, 146 U.S. 1, 27, 13 S.Ct. 3, 8, 36 L.Ed. 869 (1892). Thus, consistent with the Constitution, a state may provide for the selection of presidential electors "through *popular election* . . . or as otherwise might be directed." *Id.*, at 28, 13 S.Ct., at 8 (emphasis added). The guaranty clause is not to the contrary. "[T]he distinguishing feature of [the] form [of government guaranteed in Article IV, Section 4] is the right of the people to choose their own officers for governmental administration, and pass their own laws in virtue of the legislative power reposed in representative bodies." *In re Duncan*, 139 U.S. 449, 461, 11 S.Ct. 573, 577, 35 L.Ed. 219 (1891). By no stretch of the imagination does Alabama's "manner and system" of selecting its presidential electors violate these tenets of government.

Therefore, the Court finds, defendants' motion to dismiss should be granted.

An order will be entered accordingly.